GLENDALE PROFESSIONAL POLICEMEN'S ASSOCIATION, Plaintiff-Appellant, v. CITY OF GLENDALE, Defendant-Respondent.

*No. 77–070. Argued January 5, 1978.—Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 594.)

92

For the appellant there were briefs by *Franklyn M. Gimbel, Linda S. Vanden Heuvel* and *Gimbel, Gimbel & Reilly* of Milwaukee, and oral argument by *Linda S. Vanden Heuvel.*

For the respondent there was a brief and oral argument by *George D. Prentice,* Glendale city attorney, of Milwaukee.

Amicus Curiae brief was filed by *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general for Wisconsin Employment Relations Commission.

Amicus Curiae brief was filed by *Richard V. Graylow* and *Lawton & Cates* of Madison, for Wisconsin Council of County and Municipal Employees; Milwaukee District Council 48; Wisconsin Education Association Council; Wisconsin Professional Police Association; and Professional Fire Fighters of Wisconsin.

CALLOW, J.   This appeal concerns the relationship between a provision of a collective bargaining agreement covering the City of Glendale policemen and the statutes governing municipal organization.   The issue is whether a labor contract term tying promotions to seniority is illegal in light of the general charter law giving the Chief of Police the power to designate subordinates for promotion subject to the approval of the Board of Police and Fire Commissioners.   The facts are not disputed.

On August 1, 1975, the Glendale Professional Policemen's Association (the Association), a "labor organization" under sec. 111.70(1)(j), Stats., and the City of Glendale (the City), a "municipal employer" under sec. 111.70(1)(a), Stats., entered into a collective bargaining agreement, effective retroactively on January 1, 1974. Although the record does not so state, the City's brief

makes clear that this agreement was adopted in some manner by the City's Common Council.

Article XVII of this agreement, entitled Promotions, contains the following provision requiring the City to promote the most senior qualified applicant:

"SECTION 17.01—*Job Posting*
"Whenever a permanent vacancy occurs in a job classification or a new job classification is established in a department, such vacancy or new job classification shall be filled by the applicant with the greatest department seniority provided such employee by reason of ability, skill and efficiency is qualified therefore by written and oral examination and whatever procedure is presently in effect and in accordance with the laws of the State of Wisconsin. If the vacancy or new job classification is not filled in accordance with the above procedure, it shall be filled by the applicant with the greatest City seniority, provided such employee, by reason of ability, skill and efficiency is qualified therefore. [Sic] To determine which senior employee meets the minimum qualifications, such vacancy or new job classification shall be posted on the Association bulletin board for ten (10) days."

In September, 1975, a vacancy occurred in the position of sergeant on the midnight to 8:00 a.m. shift. Sec. 62.13 (4) (a), Stats., provides that in cities of the second, third, and fourth class, as is the City of Glendale, the chief shall appoint subordinates with the approval of the Board of Police and Fire Commissioners:

"(4) SUBORDINATES; REEMPLOYMENT. (a) The chiefs shall appoint subordinates subject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise from an eligible list provided by examination and approval by the board and kept on file with the clerk."

Pursuant to this statute and the collective bargaining agreement, the Chief of Police posted a list of eighteen

officers who were eligible to participate in an oral and written examination for promotion to the vacant position. The test was supervised by the City's Board of Police and Fire Commissioners. Fifteen officers took the test. By letter dated October 23, 1975, the secretary of the Commission informed the Chief of the three candidates with the highest test scores. The Chief then interviewed the three candidates and selected Gáry Smith, the officer who scored the highest of the three, but who did not have the most seniority. The Commission approved the Chief's choice. Officer Robert Kerber, who of the three officers named in the Commission's letter had the most seniority, and the Association filed a grievance claiming that by failing to promote Officer Kerber the City violated sec. 17.01 of the collective bargaining agreement.

The collective bargaining agreement provides that a grievance, defined to be "a complaint . . . as to the meaning or application of this agreement," is to be resolved by arbitration, as provided by the Wisconsin Arbitration Act, Chapter 298, Stats. The agreement also provides:

"The arbitrator shall have initial authority to determine whether or not the dispute is arbitrable. Once it is determined that a dispute is arbitrable, the arbitrator shall proceed in accordance with this Article to determine the merits of the dispute submitted to arbitration, and his decision shall be final and binding upon all parties."

Officer Kerber and the Association submitted the grievance to arbitration as provided by the agreement. The City participated in the arbitration proceedings. The stipulated issues submitted to the arbitrator were as follows:

"1. Did the Employer violate Sec. 17.01 of the parties' 1974–1975 Agreement when it failed to select Robert Kerber for promotion to Sergeant on November 1, 1975?

"2. If so, is the matter arbitrable and does the Arbitrator have the authority under law and the contract to enforce said provision?

"3. If 1. and 2. are so, what shall the remedy be?"

A hearing was held, briefs were submitted, and on October 8, 1976, Marshall Gratz, the Wisconsin Employment Relations Commission (WERC) arbitrator, rendered a decision in favor of the Association and Officer Kerber.

As to each stipulated issue, the arbitrator concluded as follows:

(1) The arbitrator rejected the City's contention that the contract must be interpreted to make seniority controlling only in cases of ties between employees with the highest examination scores. The arbitrator further found that Officer Kerber was "qualified" within the meaning of sec. 17.01 of the agreement and therefore that the City had breached the collective bargaining agreement in promoting Officer Smith instead of Officer Kerber.

(2) The arbitrator concluded that promotions are a mandatory subject of collective bargaining under the Municipal Employment Relations Act, secs. 111.70–77, Stats., and therefore that secs. 111.70–77 modify the provisions of sec. 62.13 (4) (a), Stats., with regard to conditions of employment subject to a collective bargaining agreement.

(3) The arbitrator ordered the City to promote Officer Kerber and awarded him back pay and benefits.

The City refused to abide by the arbitrator's award. Therefore on November 24, 1976, the Association moved to confirm the award under sec. 298.09, Stats., which permits one of the parties to an arbitration to bring an action in a court of the county in which the award was made to confirm the award. On the same day the City moved to dismiss the award or, in the alternative,

to vacate the award on the grounds that the contract provision, which was the subject of the arbitration award, was contrary to sec. 62.13 (4) (a), Stats., and to public policy and that the circuit court did not have subject matter jurisdiction of the action.

In addition to these motions, the Association filed a summons and complaint to require the City to abide by the award, and the City by answer set up the same defenses to enforcement of the award that are contained in its earlier motion to vacate the award.[1]

The circuit court granted the City's motion to vacate the award and dismissed the plaintiff's complaint on its merits. The circuit court found that sec. 17.01 of the agreement was in direct conflict with sec. 62.13 (4) (a), Stats. Therefore it concluded that the seniority clause was void because it violated the law; that the Common Council was without authority to circumvent sec. 62.13 (4) (a), Stats.; and that the arbitrator exceeded his authority in enforcing sec. 17.01 of the agreement. Judgment was entered accordingly, and the Association has appealed.

The questions presented are:

(I) *Is the arbitrator's award reviewable?*

(II) *Is the promotion provision of the collective bargaining agreement enforceable?*

---

[1] The pleadings filed by the parties are unnecessary. Sec. 298.05, Stats., provides that "Any application to the court [under the Wisconsin Arbitration Act] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." Sec. 298.12, Stats., and 298.15, Stats., permit an appeal from an order confirming, modifying, correcting or vacating an award, as from an order or judgment in an action. Thus the Association's motion to confirm the award or the City's motion to vacate it were sufficient procedural mechanisms to obtain circuit court enforcement and review of the award without the use of pleadings.

*(I) Is the arbitrator's award reviewable?*

The City contends that the contract term governing promotions is void and unenforceable because it is contrary to sec. 62.13(4)(a), Stats. That statute, it contends, vests broad and unrestricted discretion of the chiefs of police and the police and fire commission with respect to appointments and promotions and that the discretion so vested cannot be infringed by provisions of a collective bargaining agreement. However, this issue of whether the contract provision is illegal was submitted to the arbitrator and decided adverse to the City. This court has adopted a "hands off" attitude toward review of an arbitrator's decision. *WERC v. Teamsters Local No. 563*, 75 Wis.2d 602, 611, 250 N.W.2d 696 (1977). Thus the threshold issue is whether or not, no matter how erroneous the arbitrator's conclusions may be, the circuit court or this court on this appeal is entitled to set the arbitrator's decision aside and determine the issue de novo.

The collective bargaining agreement calls for arbitration of disputes governed by Chapter 298. Sec. 298.10, Stats., lists the grounds for vacating an arbitration award by the circuit court. Section 298.10(1)(d), Stats., in particular provides that the circuit court "must" vacate an award "where the arbitrators exceeded their powers." An arbitrator exceeds his authority in enforcing an illegal contract. *WERC v. Teamsters Local No. 563, supra.* Because a contract provision that violates the law is void, a dispute arising out of a violation of that provision is not arbitrable. *WERC v. Teamsters Local No. 563, supra* at 613.

Normally, the task of determining whether a dispute is arbitrable is a task for the court. *Local 1226, Rhinelander City Employees, AFSCME, AFL–CIO v. City of Rhinelander*, 35 Wis.2d 209, 219, 151 N.W.2d 30 (1967).

Here the parties stipulated to submit to the arbitrator the very issue of whether the contract term was illegal and therefore whether the dispute was arbitrable. The parties by express agreement can permit the arbitrator to decide arbitrability. *Jt. School Dist. No. 10 v. Jefferson Education Asso.*, 78 Wis.2d 94, 101–2, 253 N.W.2d 536 (1977). When the parties have submitted the question arbitrarily to the arbitrator, his decision is given very limited review[2] if it clearly appears that the parties intended the arbitrator's determination of arbitrability be final. *Jt. School Dist. No. 10 v. Jefferson Education Asso.*, *supra* at 102, 110.

In this case the contract states that "the arbitrator shall have *initial* authority to determine whether or not the dispute is arbitrable." (Emphasis added.) This language suggests that the question of the arbitrator's jurisdiction will be submitted to the arbitrator, but not for his final and binding determination. Since it does not clearly appear that the arbitrator's decision on the scope of his own jurisdiction is to be final and binding on the parties, the circuit court, though never directly facing this question, properly proceeded to review the arbitrator's determination that the contract was legal and enforceable in light of sec. 62.13, Stats.

Although the Association does not argue that the arbitrator's award is not reviewable, the Association does contend that the arbitrator's determination of this issue should be given great weight and should only be rejected if it is unreasonable. In making his determina-

---

[2] The court will overturn an arbitrator's determination of an issue only if there is a perverse misconstruction or if there is positive misconduct plainly established or if there is manifest disregard of the law or if the award itself is illegal or violates strong public policy. *Jt. School Dist. No. 10 v. Jefferson Education Asso.*, *supra* at 117–118.

tion that the contract was enforceable, the arbitrator adopted an established WERC position that contracts entered into under sec. 111.70, Stats., modify preexisting statutes. The Association invokes the rule adopted by this court that the standard of review for rulings by the WERC is whether that ruling constitutes a rational interpretation of MERA. *Beloit Education Asso. v. WERC,* 73 Wis.2d 43, 242 N.W.2d 231 (1975); *City of Milwaukee v. WERC,* 71 Wis.2d 709, 239 N.W.2d 63 (1976). *See also: Layton School of Art & Design v. WERC,* 82 Wis.2d 324, 340–342, 262 N.W.2d 218 (1978). The rationale for such limited review of rulings by the WERC is that "MERA is one of the areas of law requiring expertise." *City of Milwaukee v. WERC, supra* at 716.

This appeal does not challenge a WERC order but an award of an individual WERC arbitrator. Judicial review of arbitration awards is governed by the standards of review, contained in sec. 298.10, Stats., and in the common law. The standards of review of arbitration awards provide that in the circumstances of this case the arbitrator's award is entitled to review de novo by the reviewing court under sec. 298.10(1)(d), Stats. Review de novo accords due consideration to the arbitrator's decision, but the reviewing court is not bound by it. *Jt. School Dist. No. 10 v. Jefferson Education Asso., supra* at 106–7 n. 10. Review de novo in this case does not conflict with the rationale for the limited review of rulings of the WERC. In the typical case, the application of secs. 111.70–77, Stats., to a particular labor dispute requires the expertise of the Commission, the agency primarily charged with administering it. Here the question does not concern the application of a labor statute but the Commission's power to enforce it in the first instance in the light of another state statute. This issue, the relationship between two state

statutes, is within the special competence of the courts rather than the Commission, and therefore this court need not give great weight to the arbitrator's determination of the issue. Having thus determined that the circuit court and this court may review the arbitrator's decision de novo, we can proceed to the merits of the dispute.

### (II) Is the promotion provision of the collective bargaining agreement enforceable?

Sec. 62.13, Stats., is a provision of the general charter law which applies to all cities except cities of the first class, *i.e.*, Milwaukee. In Wisconsin, municipalities have no inherent power to govern, and the general charter law, like the special charter legislation before it, is the necessary enabling legislation setting out the areas in which local government can enact legislation. *Van Gilder v. City of Madison*, 222 Wis. 58, 85, 268 N.W. 108, 109 (1936).

Sec. 62.13, Stats., governs the organization of police and fire departments. Subsection (4) (a) states that "The chiefs shall appoint subordinates subject to the approval of the board." Sec. 62.13(12), Stats., states that "The provisions of section 62.13 . . . shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments."

The City contends that by making the chief's appointments subject only to approval by the board, sec. 62.13 (4) (a), Stats., vests unfettered discretion in the chief concerning promotion of subordinates, restricted only by the requirement of board approval. The City argues that a contract term requiring the chief to promote the most senior qualified candidate cannot be reconciled with sec. 62.13(4) (a). The City contends further that, since sec. 62.13(4) (a) is a statewide concern prompted

by an effort to achieve uniformity in city organization, a provision of a labor agreement restricting this discretion is illegal.[3]

A labor contract may not violate the law. In *WERC v. Teamsters Local No. 563, supra,* we held that a contract provision interpreted to permit an employee to violate an ordinance requiring him to live within the city was illegal. In *Durkin v. Board of Police & Fire Commissioners,* 48 Wis.2d 112, 180 N.W.2d 1 (1970), we held that an amnesty clause in a contract could not foreclose an elector from exercising his statutory power to file disciplinary charges with the board. However, we are not persuaded by the City's argument that the promotion provision of this labor agreement is void because it violates sec. 62.13 (4) (a), Stats.

Although sec. 62.13 (4) (a), Stats., requires all subordinates to be appointed by the chief with the approval of the board, it does not, at least expressly, prohibit the chief or the board from exercising the power of promotion of a qualified person according to a set of rules for selecting one among several qualified applicants. In fact, the record shows that the Chief of Police has already accepted limitation of his discretion to promote by considering as qualified only those three candidates recommended to him by the Board. A labor contract requiring the chief to appoint the most senior qualified candidate does not contradict an express command of law. *Compare: WERC v. Teamsters Local No. 563, supra.* It does not purport to take away a power expressly conferred by law. *Compare: Durkin v. Board of Police & Fire Commissioners, supra.* A requirement

---

[3] We note that the same contention could not be made if the employer were the City of Milwaukee. Sec. 111.70(4)(jm) 4.d., Stats., provides that at a collective bargaining impasse between the City of Milwaukee and representatives of the police department a promotional program can be established by an arbitrator.

that the chief promote the most senior qualified applicant merely restricts the discretion that would otherwise exist.[4] The City appears to concede that the Chief himself can decide to limit his discretion without violating sec. 62.13 (4) (a), Stats. We conclude that the same can be done through a labor agreement ratified by the Common Council.

Moreover, as a municipal employer under sec. 111.70 (1) (a), Stats., the City of Glendale must bargain with the chosen representatives of the municipal employees concerning "wages, hours, and conditions of employment," the mandatory subjects of collective bargaining under sec. 111.70 (1) (d). *Beloit Education Asso. v. WERC, supra.* Promotions are a condition of employment and are subject to mandatory collective bargaining. Because a promotions provision of this collective bargaining agreement is directly authorized by sec. 111.70, Stats., we are constrained to give effect to both the agreement and the statutes if this can be done.

In *Muskego-Norway Consolidated Jt. School Dist. No. 9 v. Wisconsin Employment Relations Board,* 35 Wis.2d 540, 556, 151 N.W.2d 617 (1967), we held that sec. 111.70, Stats., should be harmonized with other statutes whenever possible and that the provisions of sec. 111.70

---

[4] Prior to the existence of a labor contract, an employer has all rights connected with promotions and transfers, and the employer need pay no heed to seniority. *See:* Aaron, *Reflections on the Legal Nature and Enforceability of Seniority Rights,* 75 Harv. L. Rev. 1532, 1534–5 (1962). This freedom with regard to promotions and transfers can be limited by a collective bargaining agreement using seniority as a system of employment preference. It has been said that "one of the principal purposes for entering into a collective bargaining agreement is usually to secure for the employees the prized right of seniority in case of layoff and promotion." *Cournoyer v. American Television & Radio Co.,* 249 Minn. 577, 581, 83 N.W.2d 409 (1957).

can modify preexisting statutes. Specific contract provisions authorized by MERA must also be harmonized with the preexisting statutory scheme. In *Joint School Dist. No. 8 v. Wisconsin Employment Relations Board,* 37 Wis.2d 483, 492, 155 N.W.2d 78 (1967), we held that matters concerning wages, hours, and conditions of employment which are fixed by the school statutes in ch. 40 cannot be the subject of collective bargaining, but that "[w]hat is left to the school boards in respect to the school calendar is subject to compulsory discussion and negotiation."[5] This conclusion was based, at least in part, on the conclusion that because sec. 111.70, Stats., was enacted after ch. 40 it is presumed to have been enacted with full knowledge of the preexisting statutes and that these statutes should be harmonized by construction.

Again, in *Board of Education v. Wisconsin Employment Relations Board,* 52 Wis.2d 625, 638, 191 N.W.2d 242 (1971), the court held that sec. 118.21(4), Stats., which provides in part that "School boards may give to any teacher, without deduction from his wages, the whole or part of any time spent by him in attending a teachers' . . . convention . . . ," gives school boards discretion as to whether teachers individually or collectively will be given time off to attend conventions, how much time off, how many conventions, or whether the time off shall be with or without pay in whole or in part. But the court also held that "although the final determination must rest with the board of education, it is a subject upon which the board . . . must negotiate with the representative of the majority labor organization representing the teachers." 52 Wis.2d at 639.

Finally, in *Richards v. Board of Education,* 58 Wis.2d 444, 206 N.W.2d 597 (1973), a school board relieved

[5] Since that case was decided, the legislature redefined the municipal employer's duty to bargain and provided remedies for the employer's violation of that duty. Ch. 246, 1971 Wis. Laws.

a teacher of his coaching assignment without notice and a hearing. This was permitted by sec. 118.22, Stats., but it violated the grievance provisions of the collective bargaining agreement. In its original opinion the court concluded that:

"[The defendant, subject to sec. 118.22, Stats., was empowered to relieve the plaintiff of his coaching assignment without prior notice and the requirement of a common-law hearing. To the extent that the master agreement purports to limit this power, it is void.]" *Richards v. Board of Education, supra* at 460a.

On motion for rehearing this language was withdrawn. In its stead the court substituted in pertinent part:

"Under the act, a school district is considered to be a 'municipal employer,' sec. 111.70(1)(a), Stats., and this court has no difficulty in concluding that a grievance procedure established by a collective bargaining agreement, and relating to dismissals falls within the embrace of 'wages, hours and conditions of employment,' and that the conditions of such an agreement are binding on the parties. *See,* our opinion in *Local 1226 v. Rhinelander* (1967), 35 Wis.2d 209, 151 N.W.2d 30." *Richards v. Board of Education, supra,* at 460b.

The relationship between public sector bargaining agreements and other statutes governing terms and conditions of employment can be one of the most difficult issues in public sector labor law.[6] As one commentator has pointed out, a rule giving automatic priority to the statute can reduce the statutory duty to bargain into insignificance, while a rule giving automatic priority to the agreement can result in effective repeal of state

---

[6] *See generally:* Comment, *The Civil Service-Collective Bargaining Conflict in the Public Sector: Attempts at Reconciliation,* 38 U. Chi. L. Rev. 826 (1971); Weisberger, *The Appropriate Scope of Bargaining in the Public Sector: The Continuing Controversy and the Wisconsin Experience,* 1977 Wis. L. Rev. 685 (1977).

law.[7] The scope of the employer's duty to bargain under sec. 111.70, Stats., in light of the other statutes, is particularly difficult because sec. 111.70, Stats., does not contain a legislative resolution of any statutory conflicts as does the State Employment Labor Relations Act, secs. 111.80–97, Stats. The State Act provides that the labor agreement supersedes provisions of civil service and other statutes related to wages, hours, and conditions of employment. Sec. 111.93, Stats. In the absence of such a legislative resolution of the problem in sec. 111.70, Stats., et seq., we have held that collective bargaining agreements and statutes also governing conditions of employment must be harmonized whenever possible. When an irreconcilable conflict exists, we have held that the collective bargaining agreement should not be interpreted to authorize a violation of law. *WERC v. Teamsters Local No. 563, supra.*

The labor agreement in this case can be harmonized with sec. 62.13 (4) (a), Stats. The statute vests authority in the chief to appoint subordinates with the approval of the board. Appointments are to be made by promotion within the ranks "when this can be done with advantage," presumably when qualified insiders exist. Under the labor agreement, the chief is under no compulsion to promote an unqualified person or a person determined solely by the union. The seniority restriction operates only where there is more than one qualified candidate. Nothing in sec. 17.01 of the labor contract requires an appointment by promotion of the most senior officer if there are no qualified candidates within the police force or in other City employment. The arbitrator found Officer Kerber to be qualified,

---

[7] Weisberger, *The Appropriate Scope of Bargaining in the Public Sector: The Continuing Controversy and the Wisconsin Experience, supra* n. 6 at 740.

and the City does not challenge that determination. Although by entering into the collective bargaining agreement the City relinquished some of the discretion the Chief and the Board enjoyed previously concerning appointments and promotions, it has not transferred from the Chief or the Board the authority to determine who is qualified, and it has not transferred away the appointing authority.

Our construction gives effect to both the Chief's power under sec. 62.13(4)(a) and the municipality's duty to bargain under sec. 111.70, Stats. Sec. 62.13(4)(a) is enabling legislation which places the exercise of discretion in a certain office, while sec. 111.70 permits the City to limit the scope of this discretion through a collective bargaining agreement. The Common Council has not, as the City contends, bargained away a power possessed by the Chief that is not the City's to bargain. In ratifying the agreement, the Council has effectuated the municipal employer's statutory duty to bargain on conditions of employment and has preserved the statutory requirement that only qualified persons be appointed.

Because we have concluded that the contract and the statute can be harmoniously construed, we are not persuaded that the promotions provision of the contract violates the home rule amendment. The home rule amendment provides in part that "Cities . . . organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city . . . ." Wis. Const., art. XI, sec. 3. Since the legislature has declared sec. 62.13(4)(a), to be a statute of statewide concern, the City contends that the contract term which limits the chief's discretion is illegal.

The home rule amendment makes a general grant of legislative power to municipalities with respect to matters of local concern. *State ex rel. Michalek v. LeGrand,* 77 Wis.2d 520, 526, 253 N.W.2d 505 (1977). It also restricts the power of cities and villages to elect not to be subject to state laws or to enact, repeal, or amend any part of their charter where the matter involved is a matter of statewide concern. *Van Gilder v. City of Madison, supra.* On the other hand, the fact that a state statute is one of statewide concern does not make invalid all local regulation in the area covered by the statute. The home rule amendment limits a municipality's power to veto, block, or withdraw from legislation of statewide concern, but it does not prohibit the legislature from authorizing local regulation to further proper public interests, even in areas of statewide concern. *Menzer v. Elkhart Lake,* 51 Wis.2d 70, 186 N.W.2d 290 (1971). Sec. 111.70, Stats., is legislation that specifically authorizes local action, *i.e.,* the adoption of collective bargaining agreements covering wages, hours, and conditions of employment even though statutes of statewide concern also govern wages, hours, and conditions of employment.

Thus this is not a case of a municipality in the exercise of its home rule power deciding to "withdraw" from or circumvent sec. 62.13(4)(a), Stats. Sec. 17.01 of the agreement is authorized by sec. 111.70, Stats., a statute which *also* deals with a matter of statewide concern. In entering into this agreement, the City is not illegally exercising local autonomy in an area of statewide concern but is effectuating the legislature's mandate in sec. 111.70. Under these circumstances, where the issue is the relationship between the requirements of two state laws, home rule considerations are inapplicable.

The promotions provision of the labor agreement does not violate the home rule amendment. It complements, rather than contradicts, sec. 62.13(4)(a), Stats., and for that reason the circuit court erred in declaring it unenforceable. Since the arbitrator did not exceed his powers in enforcing this contract and since no other ground for vacating the award has been alleged, we must set aside the order vacating the award and direct the circuit court to enter an order confirming the award.

*By the Court.*—Judgment reversed, with directions to enter an order confirming the arbitrator's award.