# MILWAUKEE BOARD OF SCHOOL DIRECTORS, Respondent,

v.

# WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Co-Appellant,

# MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, Appellant.

Court of Appeals

*No. 90-2333. Submitted on briefs April 2, 1991.—Decided June 11, 1991.*

(Also reported in 472 N.W.2d 553.)

For the appellant, Milwaukee Teachers Education Association, the cause was submitted on the briefs of *Richard Perry* and *Peter Guyon Earle* of *Perry, Lerner & Quindel, S.C.,* of Milwaukee.

For the co-appellant, Wisconsin Employment Relations Commission, the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *John D. Niemisto,* assistant attorney general, of Madison.

For the respondent the cause was submitted on the briefs of *Grant F. Langley,* city attorney, with *Stuart S. Mukamal,* assistant city attorney, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. On March 19, 1987, the Milwaukee Teachers' Education Association (MTEA) filed a petition with the Wisconsin Employment Relations Commission (WERC). The petition sought a declaratory ruling on whether certain portions of a layoff and recall provision in a collective bargaining agreement between the MTEA and the Milwaukee Board of School Directors (Board) was a prohibited and illegal subject of collective bargaining because it violated certain teachers' constitutional rights. The petition was filed pursuant to sec. 111.70(4)(b), Stats., which states:

> (b) *Failure to bargain.* Whenever a dispute arises between a municipal employer and a union of its employes concerning the duty to bargain on any subject, the dispute shall be resolved by the commission on petition for a declaratory ruling. The decision of the commission shall be issued within 15 days of submission and shall have the effect of an order issued under s. 111.07. The filing of a petition under this paragraph shall not prevent the inclusion of the same allegations in a complaint involving prohibited practices in which it is alleged that the failure to bargain on the subjects of the declaratory ruling is part of a series of acts or pattern of conduct prohibited by this subchapter.

The layoff provision in dispute states: "[a]ll layoffs shall be based on inverse order of seniority within qualifications as set forth in the following procedures provided that the racial balance of schools is not disturbed."

The introduction of this clause into the teachers' contract has a long, detailed history. We briefly set forth the relevant events. The layoff clause was placed into the teachers' contract in 1981 when the MTEA and the Board reached a bargaining impasse and the contract was submitted to interest arbitration. The MTEA wanted the contract language to base all layoffs on strict seniority. The Board proposed the disputed race-conscious clause. At the arbitration hearing, the Board admitted that its final offer made two exceptions for seniority-based layoffs—race and qualifications.

Following the testimony, and upon exhibits and arguments, Arbitrator B. Yaffe, on September 4, 1981, ordered that the Board's final offer containing the disputed clause be incorporated into the collective bargaining agreement over the MTEA's objections.

Turning again to 1987, the MTEA petitioned WERC for a declaratory ruling. The petition was prompted by the Supreme Court case, *Wygant v. Jackson Board of Education,* 476 U.S. 267 (1986). The MTEA had advised the Board that it believed the layoff clause was illegal and unenforceable, and that pursuant to the Saving Clause[1] in the parties' agreement, the Board must bargain for a legal replacement provision. The Board refused the MTEA's demand for bargaining. WERC found that the circumstances clearly presented "a dispute . . . between a municipal employer and a

---

[1]According to WERC's decision, the Saving Clause states:

If any part or section of this contract [sic], or any addendum thereto, should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any part or section should be restrained by such tribunal, the remainder of this contract and addenda shall not be affected thereby, and the parties shall enter into immediate collective bargaining negotiations for the purse [sic] of arriving at a mutually satisfactory replacement for such part or section.

union of its employes concerning a duty to bargain." Section 111.70(4)(b), Stats.

On April 3, 1989, WERC issued its findings of fact, conclusions of law and order, finding the layoff clause to be "violative of the Fourteenth Amendment rights of non-black employes and, as such, a prohibited subject of bargaining." The Board then petitioned for judicial review pursuant to ch. 227, Stats. The Board asserted that WERC committed reversible error when it determined that the layoff clause was unconstitutional. The Board submitted that the only issues before WERC, and before the circuit court on review, were: (1) whether this clause presented an issue that was ripe for determination; and, (2) whether WERC violated the separation of powers doctrine because it did not have the jurisdiction or authority to declare a collective bargaining agreement provision unconstitutional.

On September 5, 1990, after inquiring into the two issues presented by the Board, the circuit court vacated and reversed the determination of WERC. The court found that, because there were no pending plans for a layoff and because no layoff had ever occurred in the history of the Milwaukee public schools, there was no actual or threatened injury or hardship to the parties, and, therefore, the issue was not ripe for determination. The court also found that determination of the constitutionality of a layoff provision was solely within the province of the judiciary. It asserted that an administrative body does not have the jurisdiction to decide such an issue. The trial court stated that "[i]t was not within WERC's authority to interpret matters of constitutional importance." It is from the circuit court's decision that the MTEA and WERC appeal. We reverse the circuit court and reinstate WERC's determination.

The issue before this court, as framed by WERC, is whether WERC had "the authority to resolve a labor dispute by declaratory ruling, pursuant to sec. 111.70(4)(b), Stats., where the dispute centers on a previously-applied seniority provision which touches on constitutional issues." Specifically, WERC and MTEA assert that the circuit court erred in its conclusion that the dispute was not ripe and that it erred in its conclusion that WERC lacked jurisdiction based on the separation of powers doctrine.

On appeal, the standard of review of WERC's determination is deferential under sec. 227.57(10), Stats., which in part states: "Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." *See also West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984).

The Board petitioned for circuit court review under ch. 227, Stats. The court's review of WERC's determination should have followed the same deferential standard[2] yet the court made clear errors in its factual findings. The court then based its decision on these erroneous findings. The facts at both the circuit court review and on appeal were not in dispute. Appellate deference is

---

[2]Section 227.57(6), Stats., states:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

owed to WERC's determination, which was based on its factual findings.

We agree with the MTEA and WERC that the circuit court erred in its conclusion that this dispute was not ripe and also erred in its conclusion that WERC was without jurisdiction to determine the constitutionality of this provision. We address each error separately. In *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 669, 239 N.W.2d 313, 322 (1976), our court held that four requirements must be met to permit a declaratory judgment. One of the requirements was that "[t]he issue involved in the controversy must be ripe for judicial determination." *Id.* (citation omitted).[3] Here, the circuit court held that the dispute was not ripe because first, there was no showing of hardship, and second, there was no actual injury,[4] relying on *City of Janesville v. Rock County,* 107 Wis. 2d 187, 199, 202, 319 N.W.2d 891, 897-99 (Ct. App. 1982),[5] and *Abbott Laboratories v. Gardner,* 387 U.S.

---

[3]The other requirements are: (1) a justifiable controversy; (2) a controversy between parties whose interests are adverse; and, (3) the party seeking relief have a "legally protectable interest." *Lynch,* 71 Wis. 2d at 669, 239 N.W.2d at 322. The only challenge made by the Board and addressed by the circuit court was whether the case was ripe. Accordingly, we limit our review to this issue.

[4]The court also recognized a "fitness of the issues" question but decided that this was resolved by WERC's lack of jurisdiction over the constitutional determination. We deal with the constitutional argument later in this opinion.

[5]The court's hardship and injury analysis stems from the *Abbott* case. *Janesville's* standard for whether a dispute is ripe is whether there is "an abstract or future issue," which will not be resolved by immediate judicial relief. *Janesville,* 107 Wis. 2d at 202, 319 N.W.2d at 899. As in *Janesville,* the facts here present an issue that is neither future nor abstract.

136, 148–49 (1967). The court's conclusions were predicated on clearly erroneous facts.

This dispute is ripe for two reasons. First, the court was wrong when it stated that no layoff had ever occurred in the Milwaukee public schools' history. The undisputed findings of fact of WERC state that on two prior occasions the layoff clause was implemented and, as a direct result, more white and hispanic bargaining unit members were laid off in deference to black members with less seniority. The Board admits in its brief that there have been prior layoffs and that non-black members have been adversely affected. The court's conclusion that there was no hardship was error. Second, actual injury has occurred. The court's opposite conclusion is erroneous. The court stated that the operation of the clause was speculative because it had never been implemented. WERC identified, in its findings of fact, how the clause was intended to operate:

> [I]t is important to note that the District [the Board] clearly indicated in the arbitration hearing that in implementing the provision regarding racial balance, it intends to first identify the population to be laid off without giving consideration to the race of the identified population; and only after the population to be laid off is finally identified, which will occur after bumping has taken place, will the racial composition of the population [to] be laid off be analyzed. If the percentage of Blacks in said population exceeds the overall percentage of Black teachers in the system at the time, as reflected in what has been referred to as an E.E.O. 5 Report, the most senior Black teachers identified for layoff will be exempted and replaced by the least senior non-Black teachers with similar certification/licensure and other qualifications where relevant. The number of Black teachers to be

747

exempted will be determined by the District's stated objective not to reduce the overall percentage of Black teachers in the system by virtue of the layoff.

This finding of fact is supported by substantial evidence and shall not be reversed. *See* sec. 227.57(6), Stats. When the layoff clause was implemented in the past, it operated exactly as WERC described. The court's conclusion that the clause's operation was speculative and no actual injury had occurred was error. On more than one occasion non-blacks with more seniority were laid off instead of blacks so as to not reduce the overall percentage. The specific identification of these individuals was in the record before the circuit court. There was actual injury.

The second issue on appeal is whether WERC violated the separation of powers doctrine by deciding the constitutionality of the contract clause. The court stated that the determination of the constitutionality of the lay-off provision was "solely within the province of the judiciary."[6] The court determined that first, this provision was not within WERC's collective bargaining powers; and second, that the "real" issue was whether WERC "had the authority to interpret a U.S. Supreme Court decision." The trial court erred.[7]

---

[6]At this point, the court dealt with the fitness issue, *see* *supra* note 4, concluding that if WERC did not have jurisdiction over the constitutional issue, "it certainly would not meet the fitness requirement."

[7]The merits of WERC's interpretation of *Wygant* was not reviewed by the court and is not before us on appeal. The court addressed WERC's denial of a motion to dismiss on jurisdictional grounds, made by the Board at the WERC hearings. We conclude that denial was proper. WERC had jurisdiction because the issue was ripe and WERC had the power to decide whether this clause was a prohibited subject of bargaining.

The MTEA filed its petition for a declaratory ruling under sec. 111.70(4)(b), Stats. This section gives WERC the jurisdiction to render a declaratory ruling "[w]henever a dispute arises between a municipal employer and a union of its employes concerning the duty to bargain on any subject . . .." *Id.* Following *Wygant,* the MTEA requested bargaining with the Board, pursuant to the Savings Clause,[8] which required that once a portion of the contract was held invalid by operation of law, the parties must enter immediate collective bargaining to arrive at a replacement provision. The Board refused to bargain. This refusal provided the basis for the requested declaratory ruling under sec. 111.70(4)(b).

Section 111.70(1)(g), Stats., defines a "labor dispute" as follows:

> "Labor dispute" means any controversy concerning wages, hours, and conditions of employment, or concerning the representation of persons in negotiating, maintaining, changing or seeking to arrange wages, hours and conditions of employment.

Section 111.70(4)(b) explicitly empowers WERC to resolve labor disputes "concerning the duty to bargain on any subject." It is fundamental that under the Municipal Employment Relations Act, the employer and the union representative have a duty, enforceable by WERC, to negotiate in good faith even to the point of impasse, where a matter is a mandatory subject of bargaining. *See* sec. 111.70, Stats. Conversely, where a subject is unlawful or a forbidden subject of bargaining, there can be no negotiations and neither party can insist on including it in a collective bargaining agreement.

---

[8]*See supra* note 1.

It is clear that seniority within a bargaining unit is a very important right secured under the collective bargaining agreement. *See Franks v. Bowman Transp. Co.,* 424 U.S. 747, 766 (1976). Wisconsin law also amply supports the proposition that layoff provisions are close to the core of the collective bargaining obligation. *See West Bend Educ. Ass'n,* 121 Wis. 2d at 15-21, 357 N.W.2d at 541-43; *Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 58-60, 242 N.W.2d 231, 238-39 (1976). This dispute between the MTEA and the Board is a classic labor dispute. The MTEA demanded that the Board delete the racial preference provision in the layoff clause of the teachers' contract, contending that the provision was illegal and a prohibited subject of bargaining. The Board's insistence that the clause was lawful and a mandatory subject of bargaining provided the factual basis for the requested declaratory ruling pursuant to sec. 111.70(4)(b), Stats. The issue presented to WERC in the declaratory ruling petition was whether the disputed clause was a prohibited or mandatory subject of collective bargaining. The issue before WERC arose from the existence of a disagreement between the employer and the union about whether a disputed clause can, consistent with the duty to bargain in good faith, be insisted upon to point of impasse or be included in a collective bargaining agreement.

Jurisdiction under sec. 111.70(4)(b), Stats., was established by this factual context. *See, e.g., Karow v. Milwaukee County Civil Serv. Comm'n,* 82 Wis. 2d 565, 570-71, 263 N.W.2d 214, 217 (1978) (generally, the word "shall" in a statute is presumed mandatory). WERC determined that under sec. 111.70(4)(b), its "jurisdiction" was mandatory when the question was whether

any subject is a prohibited subject of collective bargaining. The resolution of whether a subject is a mandatory, permissive or prohibited collective bargaining proposal is the specific authority granted to WERC under sec. 111.70(4)(b). WERC stated, "once we determine that there is a dispute under [s]ec. 111.70(4)(b), Stats., we have jurisdiction and must proceed to exercise the same." WERC determined that a dispute existed: "The Board has refused the Association's [MTEA] demand for bargaining. In such circumstances we think it is clear that there is a 'dispute . . . between a municipal employer and a union of its employes concerning the duty to bargain.' "

In its decision that this provision was illegal, WERC did not exercise judicial power in the sense that it decided a case or controversy involving liability for the violation of a particular "external" law. WERC actions simply declared that a particular contract provision was prohibited, just as it could have also declared it mandatory or permissive, in accordance with the mandate of sec. 111.70(4)(b), Stats. If the contract clause is unconstitutional, it is a prohibited subject of bargaining. For WERC to determine whether it is a prohibited subject, it must apply existing constitutional law to the clause in question. WERC properly exercised its authority under sec. 111.70(4)(b). It was error for the trial court to effectively relieve WERC of its mandatory statutory duty. The court's decision is reversed and WERC's determination is reinstated.

*By the Court.*—Order reversed.