The Honorable Walter Kunicki Chairperson Assembly Organization Committee 211 West, State Capitol Madison, Wisconsin 53702
Dear Representative Kunicki:
The Assembly Committee on Organization ("Committee") has asked for my formal opinion on the following question:
 [W]hen a chief of police discharges a probationary patrol officer, and the chief is acting under s. 62.13, Stats., the rules of the local board of police and fire commissioners and a labor contract, may the mayor of a city validly order the chief of police to reinstate the discharged patrol officer to a probationary position under s. 62.09 (8) and (13), Stats.? *Page 2 
In my opinion, the mayor may not lawfully order the chief of police to reinstate a discharged probationary police officer.
The committee's question is one of statutory interpretation. Specifically, how does the mayor's authority under section 62.09
(8)(a) and (d), Stats., as chief executive officer and head of the police department, with the concomitant duty of the chief, under section 62.09 (13)(a), to obey the mayor's lawful written orders, apply to the reinstatement of a discharged probationary police officer?
Section 62.09 (8) provides in relevant part that:
 (a) The mayor shall be the chief executive officer. The mayor shall take care that city ordinances and state laws are observed and enforced and that all city officers and employes discharge their duties.
. . . .
 (d) Except in cities that have adopted s. 62.13 (6), the mayor shall be the head of the fire and police departments, and where there is no board of police and fire commissioners shall appoint all police officers. . . .
Section 62.09 (13)(a) provides in part that:
 (a) The chief of police shall have command of the police force of the city under the direction of the mayor. The chief shall obey all lawful written orders of the mayor or common council.
Under section 62.13, a city with a population of at least 4,000 must establish a board of police and fire commissioners (PFC). Sec. 62.13 (1) and (2)(a), Stats. The PFC, in general, has duties concerning hiring, promoting, disciplining and removing police officers and firefighters. Sec. 62.13 (3)-(5), Stats. The PFC does not have authority over the operation of the department unless the electors, by referendum, have granted such powers to the PFC, pursuant to section 62.13 (6). The PFC appoints the police and fire chiefs, who are removable only for cause, by the PFC. Sec. 62.13 (3), Stats. *Page 3 
With regard to the appointment of police officers and firefighters, other than the chiefs, section 62.13 (4)(a) provides that "[t]he chiefs shall appoint subordinates subject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise from an eligible list provided by examination and approval by the board and kept on file with the clerk."
The PFC, for the choosing of the eligible list, adopts rules "calculated to secure the best service in the departments." Sec.62.13 (4)(c), Stats. These rules must provide for examinations under the control of the PFC. Sec. 62.13 (4)(c) and (d), Stats.
Section 62.13 (5) sets forth the procedure for the discipline and removal of police officers and firefighters, and includes the right to a hearing before the PFC.
It is well established that a probationary police officer has no right to a discharge hearing under section 62.13 (5). GlendaleProf. Policemen's Asso. v. Glendale, 83 Wis.2d 90, 107,264 N.W.2d 594 (1978). Nor can a collective bargaining agreement make the discharge of a probationary police officer arbitrable.Milwaukee Police Assn. v. Milwaukee, 113 Wis.2d 192,335 N.W.2d 417 (Ct.App. 1983). The sample collective bargaining agreement and PFC rules accompanying the committee's request, in accordance with these cases, indicate that a probationary police officer does not have a right to a discharge hearing.
The status of a probationary police officer was discussed by the supreme court in Kaiser v. Board of Police Fire Commrs.,104 Wis.2d 498, 503-04, 311 N.W.2d 646 (1981):
 Sec. 62.13 (4)(d), Stats., provides that boards of police shall examine candidates to determine their qualifications. The rules governing examination shall be "calculated to secure the best service in the departments." There is no doubt that the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available. It enables the board to *Page 4 
better evaluate a potential officer's skill and character. Probation is a continuation of the hiring process.
(Footnotes omitted.)
Section 62.09 (8)(a), (d) and (13)(a) provides the mayor with general powers over the police chief and police department. Section 62.09 (8)(d) specifically authorizes the mayor to "appoint all police officers" but this authority exists only "where there is no board of police and fire commissioners." When there is a PFC, that body examines candidates and establishes a list of eligible candidates. Sec. 62.13 (4)(c) and (d), Stats. The chief chooses from the eligible list and appoints subordinates, subject to the approval of the PFC. Sec. 62.13
(4)(a), Stats. "If the statutory language is plain and clearly understood, that meaning must be given to the statute." Abrahamv. Milwaukee Mutual Insurance Co., 115 Wis.2d 678, 680,341 N.W.2d 414 (Ct.App. 1983). Although the mayor has general powers over the police chief and police department, the plain language of section 62.09 (8)(d) specifically limits the mayor's powers with regard to the appointment of officers when the city has a PFC. The mayor clearly may not directly appoint police officers when there is a PFC.
The question then becomes whether the mayor, under the exercise of his or her general authority under section 62.09
(8)(a), (d) and (13)(a), may indirectly accomplish what may not be directly done, by ordering the police chief to appoint, or not to appoint, a particular officer. Determining the answer to this question involves the construction of sections 62.09 (8)(a), (d) and (13)(a) and 62.13 (4)(a), (c) and (d). The objective of statutory construction "is to achieve a reasonable construction that will effectuate the statutory purpose." Wanish v. LIRC,163 Wis.2d 901, 908, 472 N.W.2d 596 (Ct.App. 1991). When statutes are "contained in the same chapter and assist in implementing a common object or policy, the statutes should be read in parimateria and harmonized." Suburban State Bank v. Squires, 145 Wis.2d 445,449, 427 N.W.2d 393 (Ct.App. 1988). *Page 5 
The statutes in question are all found in chapter 62 and relate to the administration of the police department. The police and fire commission law was enacted
 for the purpose of taking the administration of fire and police departments out of city politics, in order that test of fitness for the position of fireman and policeman might be ability to serve the city, rather than ability to advance the political interests of the administration in power.
State ex rel. Pieritz v. Hartwig, 201 Wis. 450, 453, 230 N.W. 42, (1930). It follows that the mayor, whatever the scope of his or her executive powers, may not lawfully order the police chief to appoint, or not to appoint, a particular police officer in a city with a police and fire commission. To conclude otherwise would defeat the purpose of the police and fire commission law. Furthermore, because the probationary period is an extension of the hiring process, Kaiser, 104 Wis.2d at 503-04, it also follows that the mayor may not lawfully order the chief to discharge a probationary officer or to reinstate a discharged probationary officer, since this would be tantamount to directing the chief to appoint, or not appoint, the officer.
State ex rel. Wilson v. Schocker, 142 Wis.2d 179,418 N.W.2d 8 (Ct.App. 1987) does not require a contrary conclusion. In that case the common council had, by resolution, prohibited the filling of vacancies in city departments, unless authorized by the common council and mayor. The resolution was used to block the promotion of a police officer, by the chief and PFC, to fill a vacancy. The officer challenged the resolution as an infringement on the statutory duties of the chief and PFC.
The court, however, upheld the validity of the resolution, as applied to the filling of a police department vacancy, on the grounds that the resolution, "resulting from budgetary restraints, was a matter primarily related to the exercise of municipal powers and responsibilities and the integrity of the political processes of municipal government. It was a lawful act of management and control of city finances to promote the health, *Page 6 
safety and welfare of the public." Schocker,142 Wis.2d at 184-85 (footnote omitted). The situation in Schocker is easily distinguished from the situation discussed herein. The mayor and council in Schocker did not attempt to judge the qualifications of individual police officers, but instead enacted a budget freeze as an act of general fiscal management. In contrast, the facts presented by the committee involve the mayor's attempt to determine the fitness of a particular person to continue to serve as a probationary police officer.
For the above reasons, I concluded that the mayor may not lawfully order the police chief to reinstate the employment of a terminated probationary police officer.
Sincerely,
 James E. Doyle Attorney General *Page 7