BROWN COUNTY,
Plaintiff-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Defendant-Respondent,

AFSCME LOCAL 1901,
Intervening Defendant-Respondent.
[Case No. 2007AP135.]

BROWN COUNTY,
Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Respondent,

AFSCME LOCAL 1901, Respondent.
[Case No. 2007AP136.]

Court of Appeals

*Nos. 2007AP135, 2007AP136. Submitted on briefs September 17, 2007.—Decided October 10, 2007.*

2007 WI App 247

(Also reported in 742 N.W.2d 916.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *John C. Jacques*, Brown County Corporation Counsel.

On behalf of Wisconsin Employment Relations Commission, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *David C. Rice*, assistant attorney general.

On behalf of AFSCME Local 1901, the cause was submitted on the brief of *Bruce F. Ehlke* of *Hawks Quindel Ehlke & Perry, S.C.*, Madison.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. This is a consolidated appeal of two cases filed by Brown County. Both challenge a Wisconsin Employment Relations Commission proceeding that ultimately reinstated Joachim Vetter's employment as a certified nursing assistant at the Brown County Mental Health Center.

¶ 2. The County argues it had sole discretion, notwithstanding its collective bargaining agreement, to decide whether to terminate Vetter for commission of a crime "substantially related to the care of a client." *See* WIS. STAT. § 50.065(5m).[1] It also argues the Commission lacks authority to resolve the dispute. We conclude that the County's discretion is limited by its collective bargaining agreement, and the Commission has authority to resolve the matter subject to the usual judicial review. We affirm the orders.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

### BACKGROUND

¶ 3. In June 2004, Vetter was convicted of disorderly conduct as an act of domestic abuse, a class B misdemeanor. The criminal complaint alleged that during a domestic dispute Vetter pulled out a clump of his wife's hair and locked her outside for several minutes without all of her clothing. At the time, Vetter was working as a certified nursing assistant at the Brown County Mental Health Center. The County learned of the incident several months later, conducted an investigation, and concluded the conviction was "substantially related" to Vetter's work. As a result, the County terminated Vetter's employment.

¶ 4. Vetter's union, AFSCME local 1901, filed a grievance challenging the termination. The County refused to arbitrate, and the Union filed a prohibited practices complaint with the Commission. The Commission found that Vetter's criminal act

> [did] not exhibit a sufficient nexus with his ability to perform his duties as a [certified nursing assistant] to warrant discharge. It was a singular incident, did not involve clients, incurred no publicity that might tarnish the County's reputation, did not cause fellow workers to shun Vetter, and, given Vetter's several years of unblemished employment as a [certified nursing assistant] both for the County and another facility, apparently was not characteristic of his temperament or interaction with clients.

The Commission therefore concluded Vetter had been terminated without just cause in violation of the collective bargaining agreement, and ordered the County to reinstate Vetter and make him whole.

¶ 5. The County filed two circuit court actions challenging the Commission's decision. The first was a

217

declaratory judgment action filed while the Commission proceeding was pending. That action asked the court to declare the Commission was without authority to decide the dispute and to dismiss the proceeding. The court allowed the proceeding to continue. After the Commission issued its decision, the County filed a second action seeking judicial review. In the second action, the County raised the same arguments it had raised in the declaratory judgment action.

¶ 6. The circuit court issued a written decision applicable to both cases in November 2006. The court concluded the County was required to abide by its collective bargaining agreement when acting under WIS. STAT. § 50.065(5m), and the Commission had authority to decide the matter. The court affirmed the Commission's decision in all respects. The County appealed the court's order in both cases, and we consolidated the appeals.

### STANDARD OF REVIEW

■

¶ 7. The County argues the Commission lacks authority over this dispute, and that it misinterpreted the applicable statutory and constitutional provisions and the collective bargaining agreement. These arguments present questions of law, which we decide independently of the circuit court and the Commission.[2] *See Big Foot Country Club v. Wisconsin DOR*, 70 Wis. 2d 871, 875, 235 N.W.2d 696 (1975) (scope of agency authority); *Hess v. Fernandez*, 2005 WI 19, ¶ 36, 278 Wis. 2d 283, 692 N.W.2d 655 (meaning of a statute);

---

[2] The Commission and the Union do not contend any of the Commission's legal conclusions are entitled to deference. We assume without deciding that this is correct.

*State v. Eason,* 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625 (application of a constitutional provision); *Rasmussen v. Blue Cross/Blue Shield United of Wis., Inc.,* 2000 WI App 220, ¶ 5, 239 Wis. 2d 120, 619 N.W.2d 147 (meaning of unambiguous contract).

## DISCUSSION

¶ 8. The County's arguments boil down to an assertion that the County has sole discretion, despite the collective bargaining agreement, to decide whether to terminate Vetter. It also argues the Commission lacks the authority to interpret the relevant statutory and constitutional provisions.

¶ 9. The County first argues it alone is entitled to decide whether to terminate Vetter under WIS. STAT. § 50.065(5m):

> Notwithstanding s. 111.335 . . . an entity may refuse to employ or contract with a caregiver . . . if the caregiver . . . has been convicted of an offense that is not a serious crime, but that is, in the estimation of the department or entity, substantially related to the care of a client.[3]

The County argues § 50.065(5m) supersedes Article 26 of the collective bargaining agreement, which provides:

> No employee shall be discharged except for just cause. . . . Any employee who has been discharged may use the grievance procedure by giving written notice to his/her steward and his/her supervisor within ten (10) working days after dismissal. Such appeal shall go directly to arbitration.

---

[3] Both "caregiver" and "entity" are defined terms under the statute. WIS. STAT. § 50.065(1)(ag), (1)(c). The parties agree that Brown County Mental Health Center is an "entity" and Vetter was a "caregiver."

¶ 10. The Union and Commission argue this just cause provision is consistent with WIS. STAT. § 50.065(5m) and therefore controls. We agree.

¶ 11. "[C]ollective bargaining agreements and statutes also governing conditions of employment must be harmonized whenever possible." *Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 106, 264 N.W.2d 594 (1978). This means we will enforce the rights the parties have bargained for unless their agreement is in "irreconcilable conflict" with a state statute. *Id.* at 102, 106.

¶ 12. *Glendale* involved a challenge to a collective bargaining agreement that required the police chief to promote the most senior qualified candidates. *Id.* at 101. The city argued the agreement conflicted with WIS. STAT. § 62.13 (1975–76), which gave police chiefs the authority to appoint subordinates subject to approval of the board of police and fire commissioners. *Id.* at 93, 101. The supreme court interpreted the statute as consistent with the collective bargaining agreement, reasoning that the collective bargaining agreement "merely restricts the discretion that would otherwise exist" under the statute. *Id.* at 103.

¶ 13. WISCONSIN STAT. § 50.065(5m) and the collective bargaining agreement here can be harmonized in the same way. Like the statute in *Glendale*, § 50.065(5m) is discretionary, not mandatory. That is, under § 50.065(5m) the County "may refuse" to employ Vetter but is not required to take any specific action. The collective bargaining agreement placed additional limitations on the County's discretion—specifically, a requirement that the crime must amount to just cause for termination. We see no "irreconcilable conflict"

between § 50.065(5m) and the just cause provision; instead, the just cause provision "merely restricts the discretion that would otherwise exist" under § 50.065(5m). *See Glendale,* 83 Wis. 2d at 103.

¶ 14. The key to our analysis is that Wis. Stat. § 50.065(5m) is discretionary, not mandatory. Section 50.065 does have a mandatory component, which states that a hospital or similar entity "may not" employ a caregiver convicted of a "serious crime."[4] Wis. Stat. § 50.065(4m)(b). Here, however, Vetter did not commit a serious crime, as defined by statute, and the County would have been fully compliant with § 50.065 if it had decided to retain him. If the County had the authority to retain Vetter despite his conviction, nothing prevented it from agreeing to do so in a manner consistent with the collective bargaining agreement.

¶ 15. The County next relies on the "management rights reserved" clause in the collective bargaining agreement. That clause gives management the authority to comply with rules and regulations promulgated by the State and, according to the County, controls over the clause allowing termination only for just cause. The County contends the management rights clause includes a right to terminate Vetter under Wis. Stat. § 50.065(5m).

■

¶ 16. However, as noted above, nothing in Wis. Stat. § 50.065(5m) required the County to terminate Vetter. Instead, the statute gave the County the discretion to continue to employ Vetter. Because § 50.065(5m) does not contain any mandate with which management

---

[4] A "serious crime" is a violation of certain enumerated statutes or an equivalent violation in another state. Wis. Stat. § 50.065(1)(e).

was required to comply, nothing in that statute created a conflict between management's duty to comply with state regulations and its contractual obligation to terminate employees only for just cause.

¶ 17. As a final source of its discretion, the County relies on the constitutional rights of its patients. Involuntarily committed patients have a due process right to safety and personal security. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). The County contends it would be violating these patients' rights if it were to retain Vetter.

¶ 18. This argument ignores the patient safeguards contained in the collective bargaining agreement. Under the collective bargaining agreement, the County had the opportunity to prove that Vetter was terminated for just cause. The Commission carefully considered patient safety in its just cause determination; finding that Vetter's actions did not demonstrate a "sufficient nexus with his ability to perform his duties" and did not appear to be "characteristic of his temperament or interaction with clients."[5]

¶ 19. The County does not develop any argument challenging the Commission's interpretation of the collective bargaining agreement.[6] Instead, the County has consistently asserted a right to terminate Vetter *despite*

[5] The County argues the Commission erred in making findings regarding Vetter's conduct after his termination. However, all of the evidence cited by the Commission in making its just cause determination—Vetter's employment record, the details of the incident, and the reactions of Vetter's fellow employees—predated Vetter's termination.

[6] The County does state in passing that its patients' constitutional right to safety and security created just cause for

the collective bargaining agreement. The County does not explain why this broad discretion is constitutionally mandated, or why its rights under the collective bargaining agreement are inadequate to protect its patients' constitutional rights. The Commission's careful consideration of patient safety—and the County's decision to enter into the agreement in the first place—indicate the rights the County bargained for are in fact adequate to protect its patients' constitutional rights.

¶ 20. Finally, the County challenges the Commission's authority to hear this case at all. The County contends the meaning of the relevant statutes and constitutional provisions should instead have been decided by the circuit court.

¶ 21. This argument was raised and rejected in *Milwaukee Board of School Directors v. WERC*, 163 Wis. 2d 739, 472 N.W.2d 553 (Ct. App. 1991). That case involved a dispute over a contract clause that used race as part of the criteria to determine selection of employees in the event of a layoff. *Id.* at 743. The union claimed the clause was illegal because it violated its

Vetter's termination. It also argues the Commission should have made a finding on the mental health of Vetter's wife, the victim. However, the County does not respond to the Commission's and the Union's arguments that the County failed to introduce specific enough evidence to allow the Commission to make a finding regarding the victim's mental health. The County also fails to develop any argument explaining why its patients' rights created just cause. The County therefore has not made any viable challenge to the Commission's interpretation of the collective bargaining agreement. *See State v. Alexander*, 2005 WI App 231, ¶ 15, 287 Wis. 2d 645, 706 N.W.2d 191 (arguments not refuted are deemed admitted); see also *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (arguments inadequately developed will not be considered).

members' constitutional rights, and filed a prohibited practices complaint with the Commission. *Id.* at 742.

¶ 22. We concluded the Commission had the authority to decide the constitutional question. *Id.* at 751. We reasoned the Commission had statutory authority to decide whether the layoff clause was legal. To decide whether the layoff clause was legal, the Commission was required to decide the constitutional question posed. *Id.* at 749–51. We therefore concluded that the Commission's statutory authority included the power to "apply existing constitutional law to the [contract] clause in question." *Id.* at 751. A contrary holding would "effectively relieve [the Commission] of its mandatory statutory duty." *Id.*

██

¶ 23. The same reasoning applies here. WISCONSIN STAT. § 111.70(4)(a) permits the Commission to hear "cases involving prohibited practices under this subchapter . . . ." It is a prohibited practice to "violate any collective bargaining agreement . . . with respect to wages, hours and conditions of employment . . . ." WIS. STAT. § 111.70(3)(a)5. Here, Vetter's prohibited practices complaint alleged a violation of a condition of his employment—specifically, his right to keep his position absent just cause for termination—in the collective bargaining agreement. The Commission proceeding therefore was a "case[] involving prohibited practices" and was within the scope of its statutory authority. *See* WIS. STAT. § 111.70(4)(a). Under the circumstances here, to resolve the prohibited practices complaint the Commission was required to interpret WIS. STAT. § 50.065(5m) and the Constitution. As in *Milwaukee Board of School Directors*, a contrary result would "effectively relieve [the Commission] of its mandatory

statutory duty" to resolve this dispute. *See Milwaukee Bd. of Sch. Dirs.*, 163 Wis. 2d at 751.[7]

*By the Court.*—Orders affirmed.

[7] The County confuses our standard of review and the Commission's authority to decide an issue as part of an administrative proceeding. There is no dispute that in a case where an agency interprets conflicting statutes, we review its interpretation independently. *See City of Madison v. WERC*, 2003 WI 52, ¶ 10, 261 Wis. 2d 423, 662 N.W.2d 318. But the fact that an agency conclusion is not entitled to deference does not mean the agency lacks the authority to make that conclusion as part of an administrative proceeding. This was the case in *City of Madison*, on which the County relies. In *City of Madison*, the Commission interpreted conflicting statutes in an administrative proceeding, and the supreme court reviewed its interpretation of the conflicting statutes without deference. *See id.*, ¶¶ 6, 10.