CITY OF MADISON, a municipal corporation of Dane County, Wisconsin, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, and IAFF Local 311, Respondents-Respondents.

Supreme Court

*No. 99–0500. Oral argument September 17, 2002.—Decided May 30, 2003.*

2003 WI 52

(Also reported in 662 N.W.2d 318.)

For the petitioner-appellant there were briefs and oral argument by *Larry W. O'Brien,* acting city attorney.

For the respondent-respondent, Wisconsin Employment Relations Commission, there was a brief (in the court of appeals) by *David C. Rice,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the respondent-respondent, IAFF Local 311, there were briefs by *John C. Tallis, Bruce F. Ehlke,* and *Shneidman, Hawks & Ehlke, S.C.,* Madison, and oral argument by *Bruce F. Ehlke.*

Amicus curiae briefs were filed by *Scott Herrick* and *Herrick, Kasdorf, Dymzarov & Twietmeyer,* Madison, on behalf of the Board of Police and Fire Commissioners of the City of Madison.

An amicus curiae brief was filed (in the court of appeals) by *Curtis Witynski,* Madison, on behalf of the League of Wisconsin Municipalities.

¶ 1. DIANE S. SYKES, J. The issue in this case is whether a fire chief's decision to return a firefighter promoted on a probationary basis to his previous rank for failure to successfully complete probation may be subjected to arbitration. We hold that it may not.

¶ 2. Given the statutory authority vested in the chief of the fire department under Wis. Stat. § 62.13 (1999–2000),[1] as specifically recognized in the parties' collective bargaining agreement, an arbitrator may not substitute his judgment for the chief's determination that a firefighter under his command has not success-fully completed probation and is therefore not qualified to advance from probationary promotion status to the permanent rank.[2]

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. On December 6, 1994, the chief of the City of Madison Fire Department promoted firefighter Chris Gentilli to the position of fire apparatus engineer, subject to the approval of the Madison Police and Fire Commission ("PFC") and subject to a one-year proba-tionary period. The PFC approved the promotion, effec-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version.

[2] This case also presents a threshold question regarding the chief's authority to promote on a probationary basis in the first instance. In *Kraus v. City of Waukesha Police and Fire Commission*, 2003 WI 51, ¶ 3, 261 Wis. 2d 485, 662 N.W.2d 294, also released today, we concluded that police and fire chiefs may promote officers on a probationary basis, and also held that the "just cause" hearing procedures of Wis. Stat. § 62.13(5)(em) are not available in cases of non-disciplinary reductions in rank for failure to successfully complete a probationary period associ-ated with a promotion.

tive January 1, 1995, subject to Rule 5.04 of the PFC Rules and Regulations, which states:

> All promotional appointments shall be probationary for [12] months unless extended by the appointing authority for a longer probationary period. During said probationary period, the Chief may reduce the person appointed to that person's former rank. The appointee shall not be entitled to an appeal to the Board from the termination of a probationary appointment or any reduction in rank which results therefrom.

Madison Police and Fire Commission Rule 5.04.

¶ 4. Eleven months into the probationary promotion, on November 29, 1995, the fire chief informed Gentilli that his probationary appointment as an apparatus engineer was revoked. On December 22, 1995, Gentilli, through his union, filed a grievance seeking reinstatement to the rank of fire apparatus engineer and back pay and benefits associated with that higher rank.

¶ 5. The City of Madison ("City") declined to arbitrate the grievance, asserting that the Wisconsin Statutes and the collective bargaining agreement prohibited arbitration of this management decision. Specifically, the City pointed to section 9.Q.2 of the collective bargaining agreement, which states that "[a]rbitration shall not apply where section 62.13 of the Wisconsin Statutes is applicable and where Management has reserved rights relating to arbitration. . . . "[3]

¶ 6. The union filed a prohibited practices complaint with the Wisconsin Employment Relations Com-

---

[3] Wisconsin Statutes § 62.13(4)(a) provides that "[t]he [police and fire] chiefs shall appoint subordinates subject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise

mission ("WERC"). WERC held that the City was obligated to arbitrate the grievance and that its refusal to do so violated Wis. Stat. § 111.70(3)(a)5.[4] WERC ordered the City to arbitrate the grievance.

¶ 7. The City sought review in Dane County Circuit Court. The Honorable C. William Foust affirmed WERC's order. On review, the court of appeals certified the case to this court pursuant to Wis. Stat. § 809.61, on two issues: 1) whether a firefighter who is promoted on a probationary basis but is returned to his or her former rank for failing to successfully complete probation for a non-disciplinary reason is entitled to the just cause protections of Wis. Stat. § 62.13(5)(em); and 2) whether the fire chief's decision not to recommend successful completion of a probationary period for a promotion of

from an eligible list provided by examination and approval by the board and kept on file with the clerk." The statute further provides:

> For the choosing of such list the board shall adopt, and may repeal or modify, rules calculated to secure the best service in the departments. These rules shall provide for examination of physical and educational qualifications and experience, and may provide such competitive examinations as the board shall determine, and for the classification of positions with special examination for each class. The board shall print and distribute the rules and all changes in them, at city expense.

Wis. Stat. § 62.13(4)(c).

[4] The Municipal Employment Relations Act, Wis. Stat. § 111.70(3)(a)5, provides:

> It is a prohibited practice . . . .

> [t]o violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employees, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award . . . .

a tenured firefighter to a higher position is subject to arbitration. We accepted the certification.

¶ 8. The court of appeals subsequently certified *Kraus v. City of Waukesha Police and Fire Commission,* No. 01–1106, which raised the threshold question of a chief's authority to promote on a probationary basis, as well as the issue of the availability of the "just cause" hearing procedures of Wis. Stat. § 62.13(5)(em) in cases of non-disciplinary reduction in rank for failure to successfully complete probation associated with promotion. We concluded in *Kraus,* released with this opinion today, that a police or fire chief may promote on a probationary basis, and that the "just cause" provisions of Wis. Stat. § 62.13(5)(em) are not available when an officer promoted on a probationary basis is returned to his or her prior rank for failing to successfully complete probation. *Kraus,* 2003 WI 51, ¶ 3, 261 Wis. 2d 485, 662 N.W.2d 294. Thus, the sole remaining issue in this case is the arbitrability of a dispute over this particular type of management decision by a fire or police chief.

## II. STANDARD OF REVIEW

¶ 9. This case involves consideration of the powers vested in police and fire chiefs and police and fire commissions by Wis. Stat. § 62.13, in light of the Municipal Employment Relations Act, Wis. Stat. §§ 111.70–77 ("MERA"), and the applicable collective bargaining agreement. We have previously held that de novo review is appropriate when the court must interpret a collective bargaining agreement in light of Wis. Stat. §§ 62.13 and 111.70:

> In the typical case, the application of 111.70–77 to a particular labor dispute requires the expertise of the Commission [WERC], the agency primarily charged

430

with administering it. Here the question does not concern the application of a labor statute but the Commission's power to enforce it in the first instance in the light of another state statute [Wis. Stat. 62.13]. This issue, the relationship between two state statutes, is within the special competence of the courts rather than the Commission.

*Glendale Prof'l Policemen's Ass'n v. Glendale,* 83 Wis. 2d 90, 100–01, 264 N.W.2d 594 (1978). *See also City of Brookfield v. WERC,* 87 Wis. 2d 819, 827, 275 N.W.2d 723 (1979) ("We are persuaded by the *Glendale* reasoning that the WERC should not be accorded the authority to interpret the appropriate statutory construction to ch. 62.").

¶ 10. Thus, we "undertake an independent judicial inquiry into the proper construction of [§ 111.70] and its impact on the exercise of municipal powers enumerated in ch. 62." *Brookfield,* 87 Wis. 2d at 826; *see also County of La Crosse v. WERC,* 180 Wis. 2d 100, 107, 508 N.W.2d 9 (1993) (holding that de novo review is proper when considering the relationship between Wis. Stat. § 111.70 and another state statute).

■

¶ 11. Where a party has "challenged the arbitrability of [a] question and reserved the right to challenge in court an adverse ruling on arbitrability, the court [will] decide the issue of arbitrability *de novo.*" *City of Milwaukee v. Milwaukee Police Ass'n* ("*Milwaukee II*"), 97 Wis. 2d 15, 21, 292 N.W.2d 841 (1980) (quoting *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 106, 253 N.W.2d 536 (1977)). *See also Milwaukee Police Ass'n v. City of Milwaukee* ("*Milwaukee I*"), 92 Wis. 2d 145, 150, 285 N.W.2d 119 (1979) (the question of an arbitrator's jurisdiction is for the court); *Milwaukee Police Ass'n v. City of Milwaukee* ("*Milwaukee III*"), 113

Wis. 2d 192, 198, 335 N.W.2d 417 (Ct. App. 1983), *rev. denied,* 114 Wis. 2d 602, 340 N.W.2d 201, (arbitrability is a question of law for the courts).

¶ 12. Because this case requires us to interpret the arbitration language in the parties' collective bargaining agreement in light of the provisions of Wis. Stat. § 62.13, we review WERC's conclusion de novo.[5]

## III. THE APPLICABLE STATUTES AND RULES

¶ 13. Section 62.13 of the Wisconsin Statutes establishes a comprehensive system for the appointment of municipal firefighters and police officers. *See* Wis. Stat. § 62.13. It requires cities with populations of 4,000 or more to maintain a police and fire commission with jurisdiction over the hiring, promotion, and discipline of members of police and fire departments. This statutory grant of authority is shared by the chief and the board of commissioners in the manner directed by the legislature. It is a legislatively designed system of accountability in the appointment of sworn officers, and it

---

[5] *See also Crawford County v. WERC,* 177 Wis. 2d 66, 70, 501 N.W.2d 836 (Ct. App. 1993).

> [W]hether the proposal is bargainable turns on whether it abrogates or impermissibly interferes with the legal right of the three officials to appoint the designated subordinates. That is a question involving the interpretation of statutes outside the area of labor relations and the relationship of these sections to the applicable provisions of the Municipal Employment Relations Act. The issue is thus one of law 'within the special competence of the courts rather than the Commission.' . . . As a result, we do not defer to the commission's decision.

*Id.* (quoting *City of Brookfield v. WERC,* 87 Wis. 2d 819, 826–28, 275 N.W.2d 723 (1979), and *Glendale Prof'l Policemen's Ass'n v. Glendale,* 83 Wis. 2d 90, 100–01, 264 N.W.2d 594 (1978)).

subjects the appointing authorities to mutual report, recommendation, and approval responsibilities. The statute provides:

> The chiefs shall appoint subordinates subject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise from an eligible list provided by examination and approval by the board and kept on file with the clerk.

Wis. Stat. § 62.13(4)(a).

> For the choosing of such list the board shall adopt, and may repeal or modify, rules calculated to secure the best service in the departments. These rules shall provide for examination of physical and educational qualifications and experience, and may provide such competitive examinations as the board shall determine, and for the classification of positions with special examination for each class. The board shall print and distribute the rules and all changes in them, at city expense.

Wis. Stat. § 62.13(4)(c).

¶ 14. The provisions of Wis. Stat. § 62.13 "shall be construed as an enactment of statewide concern for the purpose of providing a uniform regulation of police and fire departments." Wis. Stat. § 62.13(12); *see also Racine Fire and Police Comm'n v. Stanfield,* 70 Wis. 2d 395, 398–99, 234 N.W.2d 307 (1975) (holding that the PFC may "assert its authority even when it may appear to be antagonistic to the policies of the city upon the overriding consideration that uniformity of management of fire and police affairs is a matter of statewide concern").

¶ 15. The statute gives the chiefs of fire and police departments the exclusive power to appoint subordi-

nates. Wis. Stat. § 62.13(4) ("the chiefs shall appoint subordinates"). Such appointments "shall be made by promotion when this can be done with advantage" and are subject to approval by the board of police and fire commissioners, which has the power to adopt and modify "rules calculated to secure the best service in the departments." *Id.*

¶ 16. The Madison PFC has formalized the department's long-standing practice of requiring probationary periods as part of the appointment process by adopting various written rules, including Rule 5.04, which pertains to probation in the context of promotion:

> All promotional appointments shall be probationary for [12] months unless extended by the appointing authority for a longer probationary period. During said probationary period, the Chief may reduce the person appointed to that person's former rank. The appointee shall not be entitled to an appeal to the Board from the termination of a probationary appointment or any reduction in rank which results therefrom.

Madison Police and Fire Commission Rule 5.04.

■

¶ 17. Probationary periods are a valuable part of the appointment process, as they allow fire and police chiefs an opportunity to assess a candidate's performance in the position, and thus better measure a candidate's qualifications prior to making a final decision on appointment. *Kaiser v. Bd. of Police and Fire Comm'rs,* 104 Wis. 2d 498, 504, 311 N.W.2d 646 (1981); *see also Ratliff v. City of Milwaukee,* 795 F.2d 612, 624–25 (7th Cir. 1986); *Hussey v. Outagamie County,* 201 Wis. 2d 14, 19–21, 548 N.W.2d 848 (Ct. App. 1996); *Milwaukee III,* 113 Wis. 2d at 196. In the context of new hires, this court has stated that "[t]here is no doubt that

the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available." *Kaiser,* 104 Wis. 2d at 504.

¶ 18. Promotion decisions implicate these same managerial considerations and public safety policies. Accordingly, in *Kraus,* 2003 WI 51, ¶ 3, we have concluded that fire and police chiefs are authorized to impose probation when making promotions from within under Wis. Stat. § 62.13. Therefore, the Madison PFC's rule subjecting all promotions to a 12–month probationary period is valid, and Madison's fire chief had the authority to promote Gentilli to fire apparatus engineer on a probationary basis.

¶ 19. We have also concluded in *Kraus* that the "just cause" hearing provisions of Wis. Stat. § 62.13(5)(em) are not available to an officer who is returned to his or her prior rank for failure to successfully complete a probationary period associated with a promotion. *Kraus,* 2003 WI 51, ¶ 3. Here, in any event, neither Gentilli nor the City has asked that this matter be returned to the PFC for a "just cause" hearing under Wis. Stat. § 62.13(5)(em); they have instead focused their arguments on the arbitration issue.

## IV. ARBITRABILITY

¶ 20. The determination of whether an employment dispute is subject to arbitration centers on the arbitration language in the parties' collective bargaining agreement. " 'An order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Milwaukee I,* 92 Wis. 2d at 152

(quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). There is "a broad presumption of arbitrability," and courts are limited to determining whether the arbitration language in the contract encompasses the grievance in question and whether any other provision of the contract excludes arbitration. *Milwaukee II*, 97 Wis. 2d at 22. "When the court determines arbitrability, it is limited to considering whether the arbitration clause can be construed to cover the grievance on its face *and* whether any other provision of the contract specifically excludes it." *Id.* (emphasis added) (citing *Joint Sch. Dist. No. 10*, 78 Wis. 2d at 111).

¶ 21. Thus, there are two relevant contractual inquiries in the analysis of arbitrability: 1) does the arbitration clause cover the grievance on its face; and 2) is there another provision of the collective bargaining agreement that specifically excludes arbitration? *Milwaukee II*, 97 Wis. 2d at 22; *Milwaukee I*, 92 Wis. 2d at 151; *Joint Sch. Dist. No. 10*, 78 Wis. 2d at 111. The fact that the arbitration clause covers the grievance on its face does not end the inquiry; if another provision of the contract specifically excludes arbitration of the relevant dispute, then arbitration is unavailable. *Milwaukee II*, 97 Wis. 2d at 22; *Milwaukee I*, 92 Wis. 2d at 151; *Joint Sch. Dist. No. 10*, 78 Wis. 2d at 111.

¶ 22. In *Milwaukee I*, the collective bargaining agreement at issue expressly commanded that "*the arbitrator shall take into account* the special statutory responsibilities granted to the Chief of Police." *Milwaukee I*, 92 Wis. 2d at 156 (emphasis added). Far from prohibiting arbitration, the collective bargaining agreement in *Milwaukee I* expressly required the arbitrator to evaluate the chief's statutory powers.

¶ 23. In *Milwaukee II,* the collective bargaining agreement directed that "[i]n reviewing any difference over application of a departmental rule or regulation under this grievance and arbitration procedure *the arbitrator shall take into account the special statutory responsibilities granted to the Chief of Police* under the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto." *Milwaukee II,* 97 Wis. 2d at 28 (emphasis added). That provision specifically authorized the arbitrator to consider and review the statutory powers of the chief.

¶ 24. Similarly, in *Glendale,* the collective bargaining agreement explicitly provided that the "*arbitrator shall have initial authority* to determine whether or not the dispute is arbitrable." *Glendale,* 83 Wis. 2d at 95. The agreement also expressly required the chief to appoint the most senior qualified candidate. *Id.* at 101. It did not contain any other provision specifically excluding arbitration.[6]

■■■

¶ 25. Here, the parties' collective bargaining agreement broadly recognizes and protects the management rights of the City and the chief of the fire department, including the right "[t]o hire, schedule, promote, transfer, assign, train or retrain employees in positions within the Fire Department." CBA, Article

[6] By requiring the chief to "appoint the most senior qualified candidate," the agreement in *Glendale* only permitted appointment of those candidates found to be qualified by the chief, and did not transfer to an arbitrator the chief's statutory power to decide which candidates were qualified in the first instance. That is, it did not allow an arbitrator to decide, contrary to the decision of the chief, that a candidate was qualified to hold a particular position. *Glendale,* 83 Wis. 2d at 106–07.

5.C. The following additional provisions of the collective bargaining agreement are important here:

> Any dispute with respect to Management Rights shall not in any way be subject to arbitration but any grievance with respect to the reasonableness of the application of said Management Rights may be subject to the grievance procedure contained herein.

CBA, Article 5.K.

> Arbitration shall be limited to grievances over matters involving interpretation, application or enforcement of the terms of this Agreement.

CBA, Article 9.Q.1.

> Arbitration shall not apply where Section 62.13 of the Wisconsin Statutes is applicable and where Management has reserved rights relating to arbitration in Article 5 of this Agreement.

CBA, Article 9.Q.2.

¶ 26. The first two sections quoted above might be read to generally permit arbitration of disputes regarding the reasonableness of individual applications of reserved management rights, as well as disputes regarding the interpretation, application, or enforcement of the terms of the agreement. The third quoted section, however, specifically and unequivocally excludes arbitration of matters falling within the chief's or PFC's statutory authority under Wis. Stat. § 62.13: arbitration "shall not apply" when Wis. Stat. § 62.13 is applicable and management has reserved its rights in this regard. CBA, Article 9.Q.2.

¶ 27. Therefore, unlike the collective bargaining agreements at issue in *Glendale, Milwaukee I,* and *Milwaukee II,* which specifically granted arbitrators the

438

authority to consider the chief's statutory powers, the collective bargaining agreement at issue in this case specifically precludes arbitration of matters falling within the statutory authority of the chief and the PFC under Wis. Stat. § 62.13. Furthermore, neither *Glendale,* nor *Milwaukee I,* nor *Milwaukee II* permit the "transfer[ ] from the Chief or the Board the authority to determine who is qualified" or the "transfer[ ] away [of] the appointing authority." *Glendale,* 83 Wis. 2d at 107. And that is what WERC's interpretation of the collective bargaining agreement and the statutes effectively does here.

¶ 28. The Madison fire chief has determined that Gentilli failed to qualify for permanent promotion to fire apparatus engineer because he did not successfully complete his probationary promotion to that position. Gentilli's grievance seeks an arbitrator's reversal of the chief's decision, restoration of the promotion, and back wages and benefits. The authority to determine who is qualified for appointment and promotion (and therefore who is entitled to wages and benefits associated with appointment or promotion) is statutorily vested solely with the chief and the PFC and may not be transferred to an arbitrator. *See Glendale,* 83 Wis. 2d at 106–07.

¶ 29. "[T]he chief is under no compulsion to promote an unqualified person," because a labor agreement may "not transfer[ ] from the Chief or the Board the authority to determine who is qualified" and must "preserve[ ] the statutory requirement that only qualified persons be appointed." *Id.; see also Milwaukee I,* 92 Wis. 2d at 158 (holding that an arbitrator has no authority to direct that a particular officer be given an assignment "since both the statutes and the collective bargaining agreement vest authority in the chief" to make such decisions); *Milwaukee II,* 97 Wis. 2d at 26, 32

(holding that an arbitrator may not "substitute his own discretion for that vested in one or another of the parties" and vacating the arbitration award in light of the statutory obligations and prerogatives of a municipal officer). The relief Gentilli seeks cannot be granted by an arbitrator, because the power to evaluate qualifications, to appoint, and to promote belongs exclusively to the chief and the PFC under Wis. Stat. § 62.13. This dispute regarding the chief's decision to return Gentilli to his previous rank for failure to successfully complete the probation promotion is not arbitrable.[7]

¶ 30. The court of appeals has reached a similar conclusion in the context of probationary new hires. *Milwaukee III,* 113 Wis. 2d at 198. In *Milwaukee III,* the court of appeals considered whether a police chief's decision to terminate a probationary police officer was arbitrable:

> We believe that to make a probationary termination arbitrable is to wholly vitiate the significance of a probationary term. As our supreme court noted in *Kaiser,* In examining candidates the board may limit persons on the basis of 'residence, health, habits and character.' To allow an arbitrator to reinstate a terminated probationary officer destroys the board's power

---

[7] *Milwaukee I* and *Milwaukee II* came before this court after arbitration had already taken place, and in each case this court vacated the relief granted by the arbitrator, holding that it violated the chief's statutory powers. *See City of Milwaukee v. Milwaukee Police Ass'n ("Milwaukee II"),* 97 Wis. 2d 15, 292 N.W.2d 841 (1980), and *Milwaukee Police Ass'n v. City of Milwaukee ("Milwaukee I"),* 92 Wis. 2d 145, 285 N.W.2d 119 (1979). The court did not vacate the award and then proceed to order the arbitrator to craft a new measure of relief. Had those cases come before the court in the posture of this case, it is doubtful that the court would have remanded for an arbitration which the court had already declared could not be given effect.

to limit the selection of police officers on statutorily founded bases. Were we to so read the collective bargaining agreement to allow such a termination to be arbitrable, we would be allowing a general contractual term to govern over an express power to select as vested in police chiefs and boards granted in sec. 62.13(4), Stats., and a clear manifestation of legislative intent that the standards for the training and education of police officers are matters of statewide concern, as evinced in sec. 165.85(1), Stats. That we cannot do. Where a contractual provision is in direct conflict with a statute, the statute governs.

*Milwaukee III,* 113 Wis. 2d at 196 (citations omitted).

¶ 31. The court of appeals further noted that "[i]f an arbitrator may reverse the board's or chief's exercise of discretion in terminating a probationary employe and reinstate him, the board's or chief's decision becomes meaningless; it may then always be overridden by an arbitrator." *Id.* at 197. The court concluded that "[b]ecause the strong public policy behind secs. 62.13 and 165.85, Stats., would be thwarted if the broad, general, and not express language of the collective bargaining agreement were read to make probationary terminations arbitrable, we reject so broad a reading and hold that the question is not arbitrable."[8] *Id.* at 198.

_____

[8] WERC argues, and the circuit court held, that the court of appeals in *Milwaukee III* failed to engage in the arbitrability analysis employed in *Milwaukee I* and *Milwaukee II.* In *Milwaukee III,* the court of appeals discussed this court's decision in *Glendale* and noted that that case involved a collective bargaining agreement which "by express terms" had required the chief "to appoint the most senior qualified candidate." *Milwaukee Police Ass'n v. City of Milwaukee ("Milwaukee III"),* 113 Wis. 2d 192, 197, 335 N.W.2d 417 (Ct. App. 1983), *rev. denied,* 114 Wis. 2d 602, 340 N.W.2d 201. In contrast, the agreement at issue before the court of appeals in *Milwaukee III*

¶ 32. WERC's arbitration order, affirmed by the circuit court, would transfer to WERC and an arbitrator the statutory authority of the chief and the PFC to determine whether an employee is qualified to hold a particular position. Nothing in MERA authorizes WERC or an arbitrator to displace the authority of the chief or the PFC to make the difficult judgments regarding hiring and promotion that they are statutorily entitled and uniquely qualified to make.

¶ 33. Fire chiefs, police chiefs, and police and fire commissions are exclusively empowered to make, and are responsible for, appointment and promotion decisions under Wis. Stat. § 62.13, in order to "secure the best service" in their respective departments. Wis. Stat. § 62.13(4)(c). This statutory scheme does not contemplate that an arbitrator may overrule decisions that are specifically entrusted to the chief and the PFC; nothing in Wis. Stat. § 111.70 requires such an interpretation of § 62.13. Moreover, the collective bargaining agreement in this case specifically excludes disputes regarding management rights under § 62.13 from arbitration, and any interpretation of the agreement that would effec-

---

was "*without any such express term.*" *Id.* at 197 (emphasis in original). Therefore, as we have noted, the court concluded that "the strong public policy behind secs. 62.13 and 165.85, Stats., would be thwarted if the broad, general, and *not express* language of the collective bargaining agreement were read to make probationary terminations arbitrable." *Id.* at 198 (emphasis added). There is no conflict between the holding of *Milwaukee III* that a dispute is not arbitrable if the collective bargaining agreement does not expressly make it arbitrable, and the holdings of *Milwaukee I* and *Milwaukee II* that require the arbitration clause to "cover the grievance on its face." *See, e.g., Black's Law Dictionary* 609 (7th ed. 1999) (equating "on the 'face' " with the "explicit part of a writing").

tively transfer to an arbitrator the statutory authority of the chief and the PFC to make appointment and promotion decisions would clearly conflict with § 62.13. Accordingly, the decision of the circuit court affirming WERC's order to arbitrate Gentilli's grievance must be reversed.

*By the Court.*—The order of the Dane County Circuit Court is reversed.

¶ 34. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). This case implicates the relationship between a statute governing terms and conditions of employment and a public sector bargaining agreement, one of the most difficult issues in public sector labor law.[1] A rule that gives automatic priority to a statute can render the duty to bargain insignificant while a rule giving automatic priority to an agreement can result in effective repeal of state law.[2] This court has thus demanded that "collective bargaining agreements and statutes also governing conditions of employment must be harmonized whenever possible."[3]

¶ 35. I dissent because the majority opinion fails to harmonize Wis. Stat. §§ 62.13(5)(em) and 111.70 and thus contravenes both. I would affirm the decisions of the circuit court and the Wisconsin Employment Relations Commission that ordered the City to proceed with arbitration on the union's grievance.

¶ 36. In *Kraus v. City of Madison*, 2003 WI 51, 261 Wis. 2d 485, 662 N.W.2d 294, this court effectively held

---

[1] *Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 105, 264 Wis. 2d 594 (1978).

[2] June Weisberger, *The Appropriate Scope of Bargaining in the Public Sector: The Continuing Controversy and the Wisconsin Experience*, 1977 Wis. L. Rev. 685, 740 (1977).

[3] *Glendale*, 83 Wis. 2d at 106.

that Wis. Stat. § 62.13(5)(em) does not protect municipal employees who are promoted subject to successful completion of a period of probation when they are denied that promotion during the period of probation for nondisciplinary reasons. In the present case, this court now holds that the same statute bars those same municipal employees from collectively bargaining with a municipality under Wis. Stat. § 111.70 to require that a chief's or police and fire commission's decision to deny a promotion be reasonable.[4]

¶ 37. When read together, these two decisions hold that when a police officer or firefighter is promoted contingent upon the successful completion of a period of probation, his promotion may be denied for a completely false, irrational, or unsubstantiated reason before the end of his probationary period, even if:

(1) the actual reason for denying his promotion is disciplinary and is subject to the just cause provisions of Wis. Stat. § 62.13(5)(em); and

---

[4] The court of appeals certified the following question to this court: "Is a firefighter promoted on a probationary basis but returned to his former rank for failing to successfully complete probation for an allegedly non-disciplinary reason entitled to the just cause protections of § 62.13(e)(em)?"

This court's decision in *Kraus v. City of Madison*, 2003 WI 51, 261 Wis. 2d 485, 662 N.W.2d 294 answered this question in the negative. If *Kraus* had concluded that Wis. Stat. § 62.13(5) applies to non-disciplinary demotions, a question would arise whether a just cause hearing under § 62.13(5) is the exclusive remedy and trumps arbitration of grievance in a collective bargaining agreement. The parties do not brief or argue this point, and I do not address it directly. For a discussion of exclusivity, see *City of Madison v. Dept. of Workforce Development*, 2003 WI 76, *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App. 1995).

(2) a collective bargaining agreement negotiated
 pursuant to Wis. Stat. § 111.70 requires that the
 denial be reasonable.

¶ 38. I disagree with this interpretation of the statutes. The legislature did not intend § 62.13(5)(em) to be both a sword and a shield for municipalities, allowing them to fend off all requests for just cause hearings and deflect any efforts to negotiate alternative protections for officers promoted subject to a period of probation. Nor did the legislature intend to leave police officers and firefighters helpless in the face of arbitrary and capricious personnel decisions when it enacted § 111.70, codifying the right of municipal employees to collectively bargain over their wages, hours, and conditions of employment.

¶ 39. The majority opinion here narrowly construes the collective bargaining agreement in order to create conflict between the agreement and Wis. Stat. § 62.13, contravening the rule that collective bargaining agreements and statutes must be harmonized whenever possible. The collective bargaining agreement at issue here can, I conclude, be reasonably construed to limit, not replace, the chief's discretion to return a firefighter to his prior rank during a period of probation, thereby giving effect to both the chief's power under § 62.13 and the municipality's duty to bargain under § 111.70. Under this interpretation of the statutes and the agreement, the grievance is arbitrable.

¶ 40. The majority opinion errs in two respects. First, it changes the two-prong test to determine arbitrability. Second, it erroneously applies the test of arbitrability.

I

¶ 41. To determine arbitrability in the present case, I, like the majority, must apply the two-prong test set forth in *City of Milwaukee v. Milwaukee Police Ass'n,* 97 Wis. 2d 15, 292 N.W.2d 841 (1980) (*"Milwaukee II"*). *Milwaukee II* states the test as follows: "When the court determines arbitrability, it is limited to considering [1] whether the arbitration clause *can be construed* to cover the grievance on its face and [2] whether any other provision of the contract specifically excludes it."[5] A similar test was set forth in *Milwaukee Police Ass'n v. City of Milwaukee,* 92 Wis. 2d 145, 285 N.W.2d 119 (1979) (*"Milwaukee I"*). This two-prong test was set forth by the U.S. Supreme Court in *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 (1960), which this court has frequently quoted with approval.[6]

¶ 42. The majority opinion correctly and approvingly announces this oft-repeated two-prong test as the one to be applied in the present case to determine arbitrability.[7] Yet while pretending to follow this test, the majority opinion restates and changes the test. The majority opinion declares a new two-prong test for determining arbitrability as follows: "[T]here are two relevant contractual inquiries in the analysis of arbitrability: 1) does the arbitration clause cover the griev-

---

[5] *City of Milwaukee v. Milwaukee Police Ass'n* (*"Milwaukee II"*), 97 Wis. 2d 15, 22, 292 N.W.2d 841 (1980) (citing to *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 111, 253 N.W.2d 536 (1977)) (emphasis added).

[6] Majority op., ¶ 20.

[7] *Id.*

ance on its face; and 2) is there another provision of the collective bargaining agreement that specifically excludes arbitration?"[8]

¶ 43. Gone from the first prong of the test is the concept of liberal construction embodied in the phrase "whether the arbitration clause *can be construed to cover the grievance.*" The newly stated test requires the arbitration clause to cover the grievance on its face, rather than being capable of a construction that covers the grievance. The majority opinion reveals this sleight of hand when it states:

> There is no conflict between the holding of [*Milwaukee Police Ass'n v. City of Milwaukee,* 113 Wis. 2d 192, 335 N.W.2d 417 (Ct. App. 1983) ("*Milwaukee III*")] that a dispute is not arbitrable if the collective bargaining agreement does not expressly make it arbitrable, and the holdings of *Milwaukee I* and *Milwaukee II* that require the arbitration clause to "cover the grievance on its face." *See, e.g., Black's Law Dictionary* 609 (7th ed. 1999) (equating "on the 'face' " with the "explicit part of writing").[9]

¶ 44. In short, the long-standing Wisconsin/U.S. Supreme Court test requires that arbitration provisions are to be liberally and generously construed to cover an asserted dispute; that there is "a broad presumption of arbitrability"; and that an issue should be found arbitrable if "the arbitration clause *can be construed to cover the grievance on its face.*"[10] Arbitration is denied only when, as the court stated in *Milwaukee I,* "it may be

---

[8] *Id.,* ¶ 21.

[9] *Id.,* ¶ 31 n.8.

[10] *See* majority op., ¶ 20 (quoting *Milwaukee II,* 97 Wis. 2d at 22).

said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[11]

## II

¶ 45. When the long-standing two-prong test of arbitrability is properly applied in the present case, rather than the new test set forth by the majority opinion, the only conclusion that can be reached is that the grievance is arbitrable.

¶ 46. As to the first prong of the test, the arbitration clause in the present case "can be construed to cover the grievance." The applicable provisions in Articles 5 and 9 of the collective bargaining agreement are as follows:

### ARTICLE 5

### MANAGEMENT RIGHTS

Union recognizes the prerogative of the City and the Chief of the Fire Department to operate and manage its affairs in all respects, in accordance with its responsibilities and the powers or authority which the City has not officially abridged, delegated or modified by this Agreement and such powers or authority are retained by the City.

These management rights include, but are not limited to the following:

A. To utilize personnel, methods, procedures, and means in the most appropriate and efficient manner possible.

---

[11] *See* majority op., ¶ 20 (quoting *Milwaukee Police Ass'n v. City of Milwaukee,* 92 Wis. 2d 145, 152, 285 N.W.2d 119 (1979) (*Milwaukee I*) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 (1960))).

B. To manage and direct the employees of the Fire Department.

C. To hire, schedule, **promote,** transfer, assign, train or retrain employees in positions within the Fire Department.

D. To suspend, demote, discharge, or take other appropriate disciplinary action against the employees for just cause.

. . . .

K. Any dispute with respect to Management Rights shall not in any way be subject to arbitration but **any grievance with respect to the reasonableness of the application of said Management Rights may be subject to the grievance procedure contained herein.**

. . . .

## ARTICLE 9

## GRIEVANCE AND ARBITRATION PROCEDURE

A. Only matters involving interpretation, application, or enforcement of the terms of this Agreement shall constitute a grievance under the provision set forth herein.

. . . .

I. ARBITRATION may be resorted to only when issues arise between the parties hereto with reference to the interpretation, application or enforcement of the provisions of this Agreement.

CBA (emphasis added).

¶ 47. Article 5.C. provides that the management rights are reserved to the City and Chief. These management rights include the rights to "hire, schedule,

promote, transfer, assign, train or retain employees in positions with the fire department" and "to suspend, demote, discharge, or take other appropriate disciplinary action against the employee for just cause."[12] Article 5.K. further provides, however, that "any grievance with respect to *the reasonableness of the application* of said Management Rights may be subject to the grievance procedure contained herein."[13]

¶ 48. Gentilli's grievance involves the reasonableness of the application of the management right to promote him. Thus, as the majority opinion correctly explains, Article 5.K. "might be read to generally permit arbitration of disputes regarding the reasonableness of individual applications of reserved management rights."[14]

¶ 49. I turn now to the second prong of the test: Does any provision of the collective bargaining agreement expressly exclude arbitrability of the grievance?

¶ 50. The collective bargaining agreement places two relevant limits on the arbitrability of disputes in Article 9. No other provision of the collective bargaining agreement specifically excludes this grievance.

¶ 51. First, Article 9.Q.1 of the agreement states, "Arbitration shall be limited to grievances over matters involving interpretation, application or enforcement of the terms of this Agreement."[15] Gentilli's grievance implicates the application of a term of the agreement, namely application of the management right to pro-

---

[12] *See* CBA, Articles 5.D., 5.E.

[13] *See* CBA, Article 5.K. (emphasis added).

[14] *See* majority op., ¶ 26.

[15] See CBA, Article 9.Q.1 (*quoted in* majority op., ¶ 25).

mote. Thus Gentilli's grievance falls within the express terms of an arbitrable issue and is not excluded by Article 9.Q.1.

¶ 52. Second, Article 9.Q.2 of the agreement states, "Arbitration shall not apply where Section 62.13 of the Wisconsin Statutes is applicable and where Management has reserved rights relating to arbitration in Article 5."[16] According to the majority opinion, this provision "specifically and unequivocally excludes arbitration of matters falling within the chief's or PFC's statutory authority under Wis. Stat. § 62.13" and the power to evaluate qualifications, to appoint, and to promote belongs exclusively to the chief and the PFC under § 62.13.[17] Thus, the majority opinion concludes, Gentilli's grievance is not arbitrable.

¶ 53. The majority opinion suffers from two flawed arguments. First, the majority opinion incorrectly argues that the collective bargaining agreement at issue in this case does not grant an arbitrator the authority to consider the applicability of Wis. Stat. § 62.13. The majority opinion notes that the arbitration agreements in *Milwaukee I, Milwaukee II*, and *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 264 Wis. 2d 594 (1978), expressly granted arbitrators the power to consider the chief's statutory authority, while Article 9.Q.2 here expressly excludes arbitration where Wis. Stat. § 62.13 applies. The majority opinion suggests that this distinction eliminates an arbitrator's authority to determine whether § 62.13 applies in the first place.

¶ 54. The majority's conclusion, however, ignores Article 9.Q.1. Article 9.Q.1 states that arbitration is

---

[16] See CBA, Article 9.Q.2 (*quoted in* majority op., ¶ 25).

[17] See majority op., ¶¶ 26–27.

available for grievances involving "interpretation . . . of the terms of this Agreement." Article 9.Q.2, excluding arbitration where § 62.13 applies, is, of course, a term of the agreement. Thus, the collective bargaining agreement at issue here, like those in *Milwaukee I, Milwaukee II,* and *Glendale,* authorizes arbitrators to consider whether the chief's statutory powers under § 62.13 are applicable to a particular grievance.

¶ 55. Second, and more importantly, the majority opinion improperly compares the collective bargaining agreement in this case to the broad agreement in *Milwaukee III* and not the more limited agreement at issue in *Glendale.*

¶ 56. The crux of the majority opinion is that arbitration of the decision to deny a promotion during a period of probation directly conflicts with the chief's authority under Wis. Stat. § 62.13 and is therefore invalid. Resting heavily on the court of appeals' decision in *Milwaukee III,*[18] the majority opinion concludes, "any interpretation of the agreement that would effectively transfer" the chief's right to promote officers under § 62.13 "would clearly conflict with § 62.13."[19]

¶ 57. The majority opinion's conclusion, however, fails to account for this court's decision in *Glendale.* The collective bargaining agreement in *Glendale* required that the chief promote the most senior qualified candidate. When a vacancy opened up, however, the chief promoted the officer who received the highest test score on a qualifying examination, despite the fact that of the three officers identified with the highest qualifying test scores, the selected officer was not the most senior. The promotion decision was submitted to arbitration, and

[18] Majority op., ¶¶ 30–32.
[19] Majority op., ¶ 33.

452

the arbitrator ordered the City to promote the most senior officer among the three highest scoring officers.

¶ 58. This court approved the order of the arbitrator, concluding that the collective bargaining agreement's requirement to promote based on seniority did not "take away power expressly conferred by law"; rather, it "merely restricts the discretion that would otherwise exist."[20]

¶ 59. The *Glendale* court explained that a collective bargaining agreement may restrict the promotional authority of the PFC and the chief as long as it does not transfer or displace that promotional authority in violation of Wis. Stat. § 62.13. The court stated as follows:

> Although by entering into the collective bargaining agreement the City relinquished some of the discretion the Chief and the Board enjoyed previously concerning appointments and promotions, it has not transferred from the Chief or the Board the authority to determine who is qualified, and it has not transferred away the appointing authority.[21]

¶ 60. The collective bargaining agreement in the present case is analogous to the agreement in *Glendale.* It does not transfer the chief's authority to promote (or demote) officers under Wis. Stat. § 62.13 to an arbitrator. Rather, it simply limits the chief's authority by requiring that the chief be reasonable in the application of this management right.

¶ 61. The majority opinion mischaracterizes the scope of the restriction placed on the chief's promotion and demotion authority under the collective bargaining

---

[20] *Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 102–03, 264 Wis. 2d 594 (1978).

[21] *Glendale,* 83 Wis. 2d at 107.

agreement in the present case by framing the dispute based on the relief sought in Gentilli's grievance, not the agreement itself. The majority writes, "Gentilli's grievance seeks an arbitrator's reversal of the chief's decision, restoration of the promotion, and back wages and benefits."[22] The grievance, according to the majority, therefore seeks an arbitrator's determination as to who is qualified for appointment and promotion—a power statutorily vested solely with the chief and the PFC.

¶ 62. The fact that Gentilli wishes to have his promotion restored does not mean that the collective bargaining agreement transfers the authority to decide who is qualified for a promotion to an arbitrator. In *Glendale,* the grievance of the most senior officer seeking promotion sought the same relief: order the Chief to promote the grieving officer despite the Chief's decision to the contrary.

¶ 63. Yet this court correctly interpreted the grievance in *Glendale* not as a request to displace the Chief's authority to determine qualified officers under Wis. Stat. § 62.13 but as a request to enforce the limitation on that authority bargained for under the collective bargaining agreement. The *Glendale* decision explained: "Under the labor agreement, the chief is under no compulsion to promote an unqualified person or a person determined solely by the union. The seniority restriction operates only where there is more than one qualified candidate."[23]

¶ 64. The same conclusion must be reached in the present case. The collective bargaining agreement does not compel the chief to promote an unqualified person

---

[22] Majority op., ¶ 28.
[23] *Glendale,* 83 Wis. 2d at 106.

or a particular person. It requires only that the chief's discretion to promote qualified people be exercised reasonably.

¶ 65. Gentilli alleges that "the Madison Fire Department arbitrarily and capriciously revoked [his] status as an Apparatus Engineer." He believes that he was denied his promotion eleven months into a twelve-month period of probation because of a heated discussion with a senior officer despite receiving satisfactory marks on his performance evaluation, and that this decision was unreasonable and therefore subject to arbitration under the collective bargaining agreement.[24]

¶ 66. As the hearing examiner properly concluded, "whether the revocation of Gentilli's probationary status in the Apparatus Engineer position constituted appropriate discipline for the violation of a work rule, a demotion, or the *unreasonable application of certain management rights* are issues that are to be decided by an arbitrator."

¶ 67. The majority opinion avoids a thorough discussion of this court's decision in *Glendale* by following the decision of the court of appeals in *Milwaukee III* instead.[25] *Milwaukee III*, however, is inapposite.

¶ 68. In *Milwaukee III*, the court of appeals refused to permit arbitration of a probationary termination, in part, because the collective bargaining agreement used broad and general terms to describe the arbitrator's authority and the court was reluctant to craft those terms into a mere limitation, not usurpation, of a chief's statutory authority. The *Milwaukee III*

---

[24] Gentilli was apparently the only officer among 54 who did not successfully complete the probationary period.

[25] Majority op., ¶¶ 30–32.

collective bargaining agreement generically provided for arbitration whenever there were "differences" involving the "interpretation, application or enforcement of the provisions" of the agreement. It also granted an arbitrator the authority to hear "matters of departmental discipline involving application of the rules or regulations of the Chief" whenever those matters were not subject to appeal to the PFC.

¶ 69. The *Milwaukee III* decision, however, expressly distinguished the broad, general terms in the agreement before it from the agreement at issue in *Glendale,* which, "by express terms, merely required the chief 'to appoint the most senior qualified candidate.' "[26] The same distinction is properly drawn in this case.[27] The collective bargaining agreement here provides, in express terms, that the encroachment on a chief's statutory authority to promote is limited. Under Article 5.K., the agreement authorizes grievances "with respect to the reasonableness of the application" of management rights.[28]

---

[26] *Milwaukee Police Ass'n v. City of Milwaukee,* 113 Wis. 2d 192, 197, 335 N.W.2d 417 (Ct. App. 1983) (*Milwaukee III*).

[27] The *Milwaukee III* decision is distinguishable for other reasons as well. *Milwaukee III* involved an initial probationary period, while this case involves a promotional probationary period. *Milwaukee III* involved the application of Wis. Stat. § 165.85, which applies to law enforcement officers, while this case involves firefighters.

[28] The majority opinion also misreads the holding of *Milwaukee III*. The majority opinion states that *Milwaukee III* concluded the grievance was not arbitrable because " 'the strong public policy behind secs. 62.13 and 165.85, Stats., would be thwarted if the broad, general, and not express language of the collective bargaining agreement were read to make probationary terminations arbitrable.' " Majority op., ¶ 31 n.8 (quoting

¶ 70. For the reasons set forth, I dissent.

¶ 71. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this dissent.

*Milwaukee III,* 113 Wis. 2d at 198). While *Milwaukee III* may plausibly be read to rest on this conclusion, the language of the decision is confused and such a reading violates the two-prong test for arbitrability announced in *Milwaukee I.* the *Milwaukee III* decision actually concluded that whenever a provision of a collective bargaining agreement is in direct conflict with a statute, the statute governs. *See Milwaukee III,* 113 Wis. 2d at 196. It is this latter reading of the decision that should be followed.