In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-1467

PATRICK FEHLMAN,

*Plaintiff-Appellant,*

*v.*

JAMES MANKOWSKI,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00362-jdp — **James D. Peterson**, *Chief Judge.*

_____

ARGUED OCTOBER 31, 2022 — DECIDED JULY 26, 2023

_____

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Patrick Fehlman, a former member of the Neillsville, Wisconsin police department, sued Chief of Police James Mankowski, alleging the Chief retaliated against him for critiquing the Chief's leadership, in violation of the First Amendment. The district court dismissed Fehlman's complaint. The court determined that Fehlman's statements, both directly to the Chief and later to the

Neillsville Police & Fire Commission, were made as a public employee and therefore foreclosed from First Amendment protection by *Garcetti v. Ceballos*, 547 U.S. 410 (2006). On appeal, Fehlman challenges the district court's decision about his statements to the Police & Fire Commission, but we affirm for the same reason as the district court: Fehlman's remarks were made in his capacity as a public employee, not a private citizen.

**I**

Fehlman appeals a judgment granting a motion to dismiss, so in our review of his case we assume the truth of his well-pleaded allegations. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021). Fehlman served as the Neillsville Police Department's interim police chief for most of 2019. At the start of 2020, James Mankowski was hired as the permanent police chief and Fehlman returned to his role as a rank-and-file officer.[1] Over the next several months, Fehlman raised a series of concerns about the management of the department to Mankowski, only to be rebuffed.

Fehlman and several other officers requested a meeting with the Neillsville Police & Fire Commission ("PFC") to detail their concerns. At the meeting, Fehlman addressed issues of "professional integrity and ethics," raising the following concerns:

---

[1] The parties do not specify Fehlman's position during the period relevant to this suit, but both suggest he returned to being a rank-and-file officer. While this omission is notable, we take the parties' suggestion as true.

- Mankowski instilled fear in officers at the NPD, and they feared retaliation from him.

- Mankowski lacked professionalism; in one instance, while on duty, he told a business owner that he should consider installing a stripper pole in the bar and having the business owner's wife dance on it topless.

- Mankowski ordered officers to turn off their body cameras in violation of department policy and best practices.

- Mankowski verbally abused suspects, berating them and insulting them gratuitously.

- Mankowski changed radio talk procedures in ways that threatened officer safety.

- Mankowski prioritized speed limit enforcement over responding to an allegation of child abuse at a school

Mankowski, upset that Fehlman had taken these concerns to the PFC, harassed Fehlman afterwards, including by taking away his work credit card. Mankowski also yelled at Fehlman and the other officers, threatening them with charges of insubordination.

Fehlman resigned from the NPD the next day and sought work with the Clark County Sheriff's Office. Mankowski interfered with Fehlman's recruitment by making false, negative comments about the former officer (Fehlman was hired nonetheless). Fehlman also discovered that his NPD

personnel file had been altered, and that Mankowski gave information to the unemployment compensation office that led to a delay in benefits. Upon learning Fehlman had reentered the NPD building to examine his personnel file, Mankowski sent the ex-officer a letter banning him from the premises.

Fehlman sued Mankowski under 42 U.S.C. § 1983, alleging violation of his First Amendment rights. Mankowski moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Fehlman's speech lacked constitutional protection because it was made pursuant to his official duties. The district court agreed with Mankowski, leading to this appeal. Fehlman concedes that the complaints he directed initially to Mankowski do not qualify for First Amendment protection, so this appeal concerns only his statements to the PFC.

## II

We review a dismissal for failure to state a claim under Rule 12(b)(6) de novo, accepting as true all well-pleaded facts and drawing reasonable inferences in favor of the non-moving party. *Peterson*, 986 F.3d at 751.

Establishing a prima facie case of First Amendment retaliation requires showing (1) Fehlman engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter him from exercising his First Amendment rights; and (3) the speech was a motivating factor in the employer's adverse action. *Sweet v. Town of Bargersville*, 18 F.4th 273, 277–78 (7th Cir. 2021). Fehlman claims that he suffered retaliation both during and after his employment with the NPD. But because we conclude that Fehlman's speech was not constitutionally protected, we deny his appeal.

Whether a public employee's speech is protected turns first on whether the speech was made in the employee's capacity as an employee or as a private citizen. *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). If speech occurs "pursuant to their official duties," employees are not speaking as private individuals for First Amendment purposes and therefore cannot turn to the Amendment's protections as a defense against employer discipline. *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006).

Whether speech is made "pursuant to" official duties is broader than an employee's job description. Employees' statements about "misconduct affecting an area within [their] responsibility" are considered official-capacity speech even if those employees are not ordinarily responsible for investigating misconduct. *McArdle*, 705 F.3d at 754. This is particularly pronounced for law enforcement officers whose "duty to report official police misconduct is a basic part of the job." *Forgue v. City of Chicago*, 873 F. 3d 962, 967 (7th Cir. 2017).

We conclude that Fehlman's speech to the PFC was made in his role as a police officer. A key factor in this determination is the structure of the PFC itself. By statute, boards like the PFC retain the general authority "[t]o organize and supervise the fire and police … departments and to prescribe rules and regulations for their control and management." WIS. STAT. § 62.13(6). Relatedly, the PFC has disciplinary authority over the chief of police, who "shall hold their offices during good behavior, subject to suspension or removal by the [PFC] for cause." *Id.* § 62.13(3). The Wisconsin Supreme Court has also interpreted this provision as creating a "comprehensive system" requiring cities to maintain commissions "with jurisdiction over the hiring, promotion, and discipline of members of

police and fire departments." *City of Madison v. Wis. Emp. Rels. Comm'n*, 2003 WI 52, ¶ 13, 261 Wis. 2d 423, 432, 662 N.W.2d 318, 322 (2003). These statutory provisions governing the PFC strongly suggest the body is best seen as part of Fehlman's chain of command. This renders Fehlman's remarks a form of internal grievance. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008) (holding that a senior administrator who testified before a legislative committee with oversight of her agency was "discharging the responsibilities of her office, not appearing as 'Jane Q. Public.'"); *Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (distinguishing an employee's internal complaint about an assault, which was made pursuant to official duties, from a police report on the same conduct, which was provided as a citizen). Fehlman's statements to the PFC are the definition of speech that, in *Garcetti*'s formulation, "owes its existence to a public employee's professional responsibilities," and therefore do not implicate speech liberties the employee enjoys as a private citizen. 547 U.S. at 421–22.

Fehlman disagrees, arguing Wisconsin law demonstrates his remarks were made as a citizen. In doing so, he notes police chiefs have the authority to file disciplinary charges against subordinates with the PFC, *see* WIS. STAT. § 62.13(5)(b), but subordinates do not have corresponding power to bring charges upwards against their chiefs to the PFC. From this, Fehlman concludes that "[a]ny misconduct exposed by a subordinate before a police commission against a chief would necessarily be as a citizen." Fehlman's supposition is a cramped view of the Wisconsin statute. That subordinates lack the ability to bring charges against superiors does not necessarily reduce the subordinates' complaints to that of a common citizen. Further, simply because the statute does not provide a mechanism for subordinates to file formal

complaints against their superiors does not mean the PFC cannot solicit employees' views as a part of the investigations it undertakes pursuant to its statutory authority discussed above.

The circumstances of Fehlman's meeting with the PFC further support our conclusion that his speech was made in his capacity as a police officer, not a private citizen. Fehlman alleged that he and his fellow officers "requested a meeting" with the PFC. He then attended the meeting, along with two other officers. So did Mankowski, who at some point also spoke with the PFC. Fehlman does not allege the meeting was open to the public, and the minutes from the PFC's meeting indicate that it went into closed session "for the purpose of considering employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility, specifically issues and procedures of the Neillsville Police Department."[2] That Fehlman spoke in a closed meeting, which he requested, and which the PFC described as a meeting to address governance issues involving the NPD, underscore the degree to which Fehlman's speech was made

---

[2] Neillsville, WI. Police & Fire Commission, Minutes of the Thursday, June 25, 2020 3:00 PM Meeting, https://neillsville-wi.com/wp-content/uploads/2020/07/Minutes-Police-Fire-06-25-20-OPEN.pdf. The PFC meeting's minutes are not attached to Fehlman's amended complaint or otherwise included in the record. However, the complaint references the minutes at paragraph 20. Documents that a plaintiff relies on in a complaint may be considered at the motion to dismiss stage and therefore by this court on appeal. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

pursuant to his official duties. He used what is effectively a supervisory agency of the NPD to raise a complaint about his manager.

Taken as a whole, the record before us suggests the PFC is best considered an extension of the NPD's management and operational structure. Fehlman provided insight from his perspective as an employee, not a private citizen, to assist the PFC in carrying out that function.

Because we conclude that Fehlman spoke not as private citizen but as a public employee, we do not reach the second hurdle he would need to surmount to succeed with a First Amendment retaliation claim. That second question, reserved for private citizen speakers only, is whether the speech addressed a matter of public concern. *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010). As the district court ably explained, "under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a public employee's speech made pursuant to his official duties isn't protected by the First Amendment, no matter how important that speech may be or how it could affect the public interest." Because Fehlman's comments were made in his role as a public employee, they are not subject to First Amendment protection, regardless of whether his critiques of Mankowski might affect or interest the public.

**III**

Fehlman argues that even if his speech was not protected under the First Amendment when he was employed by the NPD, his speech is protected from Makowski's alleged post-employment retaliation because none of the policy arguments underpinning *Garcetti* apply to the post-employment context. But there is no caselaw supporting this reading of *Garcetti*.

Establishing a prima facie case of First Amendment retaliation requires an initial showing that the speech the employee engaged in was constitutionally protected. *Sweet*, 18 F.4th at 278. If the speech is not protected to begin with, any retaliation for that speech is not actionable under a First Amendment framework, so the question of whether that retaliation happened during or after employment is legally irrelevant.

## IV

For these reasons, we **AFFIRM** the district court's decision.